# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT
# CASE NO. 14-5157

**BRIDGETTE SNYDER**
**APPELLANT**

**V.**

**KOHL'S DEPARTMENT STORE**                              **APPELLEE**

*On Appeal from United States District Court*
*Of Eastern District of Kentucky, Central Division*
*at*
*Lexington, Kentucky*
*Case No. 5:12-CV-00362-DCR*

## BRIEF IN SUPPORT OF APPELLANT, BRIDGETTE SNYDER

Respectfully Submitted

*/s/Edward E. Dove*
HON. EDWARD E. DOVE
300 Lexington Building
201 West Short Street
Lexington, Kentucky 40507
(859) 252-0020

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

### DISCLOSURE OF CORPORATE AFFILIATIONS
### AND FINANCIAL INTEREST

**Sixth Circuit Case No. 14-5157**
**Bridgette Snyder v. Kohl's Department Store**

Pursuant to 6th Cir. R. 26.1, Appellant Bridgette Snyder makes the following disclosure:

1.      Is said party a subsidiary or affiliate of a publicly owned corporation? If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party.

NO

2.      Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome? If yes, list the identity of such corporation and the nature of the financial interest:

NO

*/s/ Edward E. Dove*
EDWARD E. DOVE

i

# **TABLE OF CONTENTS**

Disclosure of Corporate Affiliations
        and Financial Interest. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF CONTENTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv
        Cases. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv
        Statutes. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v
        Other Authority. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vi

STATEMENT IN SUPPORT OF ORAL ARGUMENT. . . . . . . . . . . . . . . . . . 1

JURISDICTIONAL STATEMENT.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE ISSUES.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

STATEMENT OF THE FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
        Summary

                **THE APPELLANT'S'S FACTS PRESENTED GENUINE ISSUE
                OF MATERIAL FACT AND LAW SUFFICIENT TO DEFEAT
                SUMMARY JUDGMENT**. . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
        Standard of Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
        I.      **THE KOHL'S DEPARTMENT STORE PERSONNEL LACKED PROBABLE
                CAUSE TO DETAIN THE APPELLANT**. . . . . . . . . . . . . . . . . . . . . . . 16
        II.     **THE APPELLANT'S DETENTION AND STRIP SEARCH WERE NOT
                REASONABLE UNDER THE FACTS**. . . . . . . . . . . . . . . . . . . . . . . . . 20
        III.    **THE PLAINTIFF SUFFERED INTENTIONAL INFLICTION OF EMOTIONAL
                DISTRESS.**

                . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
                1.      The Strip Search of The Plaintiff Was Outrageous and Offends

Against the Generally Accepted Standards of Decency and
Morality. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

2.    The Defendant's Conduct was Reckless and the Defendants
Should Have Known that it was Unlawful. . . . . . . . . . . . . . . 31

3.    The Plaintiff Suffered Severe Emotional Distress.. . . . . . . . . 32

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

CERTIFICATE OF COMPLIANCE. . . . . . . . . . . . . . . . . . . . . . . . . . . 35

**Designation of Relevant Lower Court Documents**. . . . . . . . . . . . . . . . . . . . . 36

# TABLE OF AUTHORITIES

<u>C</u>ASES

<u>Bell v. Wolfish</u>, 441 U.S. 520, 558 (1979). .. . . . . . . . . . . . . . . . . . . . . . . . . . 27

<u>Birdsong v. Wal-Mart Stores</u>,74 S.W.3d 754 (Ky. Ct. App. 2001).  . . . . . . . . 21-23

<u>Broaddus v. Campbell</u>, 911 S.W.2d 281, 283 (Ky. App. 1995)... . . . . . . . . . . . . 23

<u>Capital Holding Corp. v. Bailey</u>, 873 S.W.2d 187, 196 (Ky. 1994) . . . . . . . . . . . 28

<u>Craft v. Rice</u>, 671 S.W.2d 247 (Ky. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

<u>Durruthy v. Pastor</u>, 351 F.3d 1080 (11th Cir. 2003. . . . . . . . . . . . . . . . . . . . . . . 20

<u>Grayson Variety Inc., v. Shaffer</u>, 402 S.W.2d 424, 425 (Ky. 1966). . . . . . . . . . . . 25

<u>Great Atlantic and Pacific Tea Co. v. Smith</u>, 281 Ky 583, 136 S.W 2d 759, 767 (1940). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22

<u>Harper v. Howton</u>, 194 Ky. 840, 241 S.W. 329 (Ky. 1922). . . . . . . . . . . . . . . . . 21

<u>Humana of Kentucky v. Seitz</u>, 796 S.W.2d (1990).. . . . . . . . . . . . . . . . . . . . . . . 32

<u>J. Newberry Co. v. Judd</u>, 259 Ky. 309, 82 S.W.2d 359 (Ky. 1935). . . . . . . . . . . . 22

<u>Johnson v. Norfolk & W. Va. R. Co.</u>, 82 W. Va. 692, 97 S.E. 189, 6 A.L.R. 1469 (W.Va. 1918). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

<u>Kroger Co., v. Wilgruber</u>, 920 S.W. 2d 61, 65 (Ky. 1996).. . . . . . . . . . . . . . .  29-32

<u>Mary Beth G. v. Chicago</u>, 723 F.2d 1263, 1272 (7th Cir. 1983).  . . . . . . . . . . . . 27

<u>McDonald's v. Ogburn</u>, 309 SW3d 274 (Ky. Ct. App. 2009). . . . . . . . . . . . . . 24, 25

<u>Meredith v. Winter Haven</u>, 320 US 228, 238 (1943). . . . . . . . . . . . . . . . . . . . . . . 15

Miller v. Ashcraft, 98 Ky. 314, 32 S.W. 1085, 17 Ky. L. Rep. 894 (Ky. 1895). . . 22

Osburne v. Payne, 31 S.W.3d 911, 914 (Ky. 2000).. . . . . . . . . . . . . . . . . . . . . . 32

Salve Regina College v. Russell, 499 US 225, 231, 113 L.Ed.2d 190, 111 S.Ct. 1217 (1991).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Schmerber v. California, 384 U.S. 757, 767 (1966). . . . . . . . . . . . . . . . . . . . . . 27

Shreve v. Jessamine Cnty. Fiscal Court, 453 F.3d 681 (6th Cir. 2006).. . . . . . 21, 25

Steelvest, Inc. v. Scansteel Serv. Ctr., Inc., 807 S.W.2d 476 (Ky. 1991). . . . . . . 16

Sternberg v. Hogg, 254 Ky. 761, 72 S.W.2d 421 (Ky. 1934).. . . . . . . . . . . . . . . 22

SuperX Drugs of Ky., Inc. V. Rice, Ky. App. 554 SW2d 903, 905-907 (1977). . 17, 24

Terry v. Jackson, 19 Fed. Appx. 377 (6th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . 23

Walmart Stores v. Mitchell, 877 SW2d 616, 618 Ky. App. (1994). . . . . . . . . . . 22

Walmart, Inc. V. Mitchell, 877 616, 617 (Ky., 1994). . . . . . . . . . . . . . . . . . . . . 24

Whitworth v. Consol. Biscuit Co., 2007 U.S. Dist. LEXIS 25971 (E.D. Ky. Apr. 6, 2007).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30, 31

Woods v. American Eagle Outfitters, Inc, 1999 U.S. Dist. Lexis 14455.. . . . . . . 26

Ziegler v. IBP Hog Mkt., Inc, 249 F3d 509, 512 (6th Cir. 2001) . . . . . . . . . . . . 15

**STATUTES**

42 USC §1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 13, 14

KRS 433.236. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 14, 23, 24, 31

## <u>OTHER AUTHORITY</u>

6th Cir. R. 26.1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  i

*American Law Institute's Restatement of the Law of Tort, Vol. 1, Section 35, p. 66; 22 Am. Jur., Section 9, p. 359.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

FRAP 3(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Newell on Malicious Prosecution, 56.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

## STATEMENT IN SUPPORT OF ORAL ARGUMENT

The Appellant states that Oral Argument is requested. There are many issues raised by the Appellant that may benefit the Court to address specific points of the Appellant's and Appellee's argument.

## JURISDICTIONAL STATEMENT

This case comes before the Court pursuant to FRAP 3(a) which allows the Appellant to appeal from a Final Judgment of the United States District Court for Eastern District of Kentucky Central Division at Lexington. The Trial Court entered an Order (D.E. 51, Memorandum, Opinion and Order, Page ID # 948) and Judgment (D.E. 52, Judgment, Page ID# 958) granting Summary Judgment in favor of the Appellee. The Appellant and only the Appellant timely appealed the Court's decision by filing her Notice of Appeal (D.E.53, Notice of Appeal, Page ID# 959) on February 12, 2014.

## <u>STATEMENT OF THE ISSUES</u>

This case arises out of the District Court's Order granting Summary Judgment in favor of the Appellee Kohl's Department Store, Inc. (D.E. 51, Memorandum, Opinion and Order,  Page ID # 948) The case arises out of an incident which occurred on March 1, 2012  in Georgetown, Scott County, Kentucky.  The Appellant alleges that she was wrongfully imprisoned an subjected to the intentional infliction of emotional distress when she was stripped search by the Appellee's employees during the investigation of an alleged shoplifting incident.

The Appellant requests review of the following issues.

1.    Whether the Trial Court erroneously granted the Appellee's Motion for Summary Judgment on the Appellant' remaining state claims.

2.    Whether the Appellee violated KRS 433.236(1) when its employees conducted a strip search of the plaintiff on the suspicion of shoplifting.

3.    Whether the Appellee's strip search of the Plaintiff constituted intentional infliction of emotional distress under Kentucky law.

## STATEMENT OF CASE

On March 1, 2012 the Appellant went to shop at the Appellee's Georgetown, Kentucky location. The Plaintiff browses through the store and decided to try on some clothing and went to the fitting room with the clothing. The Appellee observed the Appellant and believed her conduct was suspicions.

The Appellant left the fitting room leaving the clothing behind (which was store practice) and started to exit the store. At that point, the Appellant was requested by the Appellee's loss prevention employee, Michael Pittman, to return with him to the loss prevention room because she was under the suspicion of shoplifting.

The Appellant co-operated with Pittman and went with him to the small loss prevention room where she was questioned about shoplifting clothing. The Appellant repeatedly denied that she had shoplifted.

At some point during the interrogation and detention of the Appellant, a City of Georgetown law enforcement officer was called. Upon arrival, Officer Chris Bayer began to question the Appellant about her shoplifting merchandise.

After the Appellant was detained, approximately forty (40) minutes, Officer Bayer asked if the Appellant would agree to be strip searched. The Appellant reluctantly agreed to the intrusive search in order to avoid arresting by Bayer and the continued detention.

3

The Appellant was taken to a fitting room with the Appellee's employee, Laurie Stephens. The Appellant was asked to remove articles of clothing. After Phillips was satisfied that the Appellant was not concealing Kohl's merchandise, they left the room and briefly returned to the loss prevention room. The Appellant was then allowed to leave Kohl's approximately forty (40) minutes after she was initially detained by Pittman.

On or about November 12, 2012 the Appellant filed her claims in Scott Circuit Court (D.E. 1-1, Notice of Removal, State Court Complaint, Page ID# 5). The Appellant case alleged state claims of false imprisonment and intentional infliction of emotional distress. The Appellant's claim included 42 USC §1983 claims against Officer Bayer and the City of Georgetown Police Department. The parties attempted mediation and the Appellant settled claims against the City of Georgetown and Bayer. (D.E. 46, Notice of Voluntary Dismissal, Page ID# 929)

The Appellee then moved the District court for summary judgment on the Appellant' remaining state claims. On January 15, 2014 the U.S. District Court granted the Appellee's Motion for Summary Judgment (D.E. 51, Memorandum, Opinion and Order,  Page ID # 948) and Judgment (D.E. 52, Judgment, Page ID# 958).

The Appellant filed her Notice of Appeal on February 12, 2014 (D.E.53, Notice of Appeal, Page ID# 959)

## STATEMENT OF THE FACTS

At all times relevant, Bridgette Snyder was a 28 year old resident of Georgetown, Scott County, Kentucky. On the evening of March 1, 2012, the Plaintiff went to Kohl's Department (hereinafter "Kohl's) to do some shopping prior to meeting friends for the evening (D.E. 30, Snyder Depo. [Pg. 20], Page ID #143).

The Plaintiff proceeded to look at some shoes and other clothing in the junior's department (D.E. 30, Snyder Depo. [pg. 20], Page ID #143). The Plaintiff found approximately six (6) items that she wanted to try on and proceeded to the fitting room. (D.E. 30, Snyder Depo. [Pg. 21], Page ID #144). She tried on the items of clothing and not one met her desire to purchase. She left the fitting room and left the clothes in the fitting room stall. (D.E. 30, Snyder Depo. [Pg. 22], Page ID #145).

Unbeknownst to the Plaintiff, she had been under visual surveillance by the Defendant's Prevention Officer Pittman and by video surveillance by Loss Prevention associate Michael Tam Lung. When asked why the Plaintiff was under surveillance, Pittman stated that he observed the Plaintiff for approximately one minute (D.E. 35-6, [Plaintiff's] Response to [Defendant's] Motion for Summary Judgment, Pittman Depo., [p.25], Page ID # 807-814). He also testified that she was in the junior's section picking up clothes disregarding the size and price. (D.E. 35-6, [Plaintiff's] Response to

[Defendant's] Motion for Summary Judgment, Pittman Depo., [p.25], Page ID # 807-814).

Pittman witnessed the Plaintiff entering the fitting room with approximately eleven (11) items of clothing.

A.    When I noticed her picking up the thing – the clothes originally, there was several that was grabbed real quick.  That's when I had Tam Lung pick her up.  After she walked in there, I noticed the two pairs of jean shorts that she carried in there too, that also had the two hard tags.

Q.    Hard tags meaning what?

A.    They're EAS tags.  They're a tag probably about, I don't know, two and a half, three inches long that go into the seam of certain items there at the store.

Q.    And do these tags, are they the ones that electronically set off the alarm if people leave with the tags on?

A.    They're supposed to, yes.

Q.    Do they always work?

A.    No.

(D.E. 35-6, [Plaintiff's] Response to [Defendant's] Motion for Summary Judgment, Pittman Depo., [p.26], Page ID # 807-814).

Kohl's policy fitting the "concealment of clothing" in these circumstances states as follows:

6

### 3.    Concealment

You must observe the subject conceal the selected Kohl's merchandise. When concealment is not visible due to fitting rooms, refer to section 1-B describing the Fitting Room Concealment Policy.
In situations where concealment does not occur, (e.g., cart push-outs, attempts

to wear merchandise out of a store that has not been purchased, etc.) it is acceptable to apprehend if steps 1, 2, 4 & 5 have been met.

Prior to Snyder entering the fitting room as has been previously stated, Defendant employee Tam Lung was observing her on a surveillance camera. When asked what Tam Lung saw, he said she picked up four (4) items. (Tam Lung Depo., Pg. 21).  Long stated that Pittman contacted him about Snyder. When Tam Lung was asked what he saw suspicious about the Plaintiff on March 1, 2012, he stated that she left the fitting room very quickly.

Q.    What brought your attention to Ms. Snyder?

A.    Her mannerisms.

Q.    And was there any more than her just leaving fast?

A.    No.

Q.    What do you remember happening next?

A.    I was asked if she had exited the fitting room and I told Mr. Pittman, yes. So he proceeded to go inside and check the stall that she was in.  He asked me after he came out where is she going to?  And I said it looks like she's heading towards the men's doors and she's exiting the men's doors.

(D.E. 35-5, [Plaintiff's] Response to [Defendant's] Motion for Summary Judgment, Tam Lung, Depo., [p.23], Page ID # 801-806).

After exiting the fitting room, the Plaintiff proceeded to leave Kohl's to meet her friends. The Plaintiff was stopped by Pittman and asked if she knew what she was being stopped, Snyder responded that she did not have any Kohl's merchandise. (D.E. 30, Snyder Depo. [Pg. 24], Page ID #147). Pittman then told the Plaintiff she needed to follow him to the loss prevention room in a stern voice. (D.E. 30, Snyder Depo. [Pp. 25-26], Page ID #148-149). The Plaintiff was escorted to the loss  (D.E. 35-6, [Plaintiff's] Response to [Defendant's] Motion for Summary Judgment, Pittman Depo., [p.34], Page ID # 807-814). prevention room by Defendant employees Pittman, Tam Lung and Laurie Stephens.

The loss prevention room was a small room approximately 8' by 16' feet. The room was furnished with two (2) chairs, Kohl's DVR system, monitors, computer desk, filing cabinets.  (D.E. 35-6, [Plaintiff's] Response to [Defendant's] Motion for Summary Judgment, Pittman Depo., [p.35], Page ID # 807-814).  There is only one door in and out of the loss prevention room.   (D.E. 35-6, [Plaintiff's] Response to [Defendant's] Motion for Summary Judgment, Pittman Depo., [p.36], Page ID # 807-814). The Plaintiff took the chair the furthest from the door and one of the Kohl's employees was standing next to the door (Exhibit 1, Pitman Depo.-Exhibit 1). Pittman

8

questioned the Plaintiff about the alleged stolen merchandise. It is alleged that the Plaintiff became loud and said she did not have any concealed Kohl's merchandise. At that point, Tam Lung called the City of Georgetown Police Department. Officer Chris Bayer was dispatched to Kohl's to investigate.

The Plaintiff remembers interrogation before Bayer's arrival as follows

A.   The gentleman who stopped me, he told me he would give me an opportunity to tell the truth before he called the police. I told him that – he asked me if I had anything on me. I told him no. I had my keys and my wallet and my cell phone sitting on the counter beside me and I was like, this is all I have. I told him I did not have anything that I did not come in with.

Q.   What did he say?

A.   He said – there was something – he kept repeating one thing. He would say, "I'm sorry if I'm wrong, but I'm never wrong.

(D.E. 30, Snyder Depo. [Pg. 38], Page ID #161).

While being interrogated by Pittman, Tam Lung and Laurie Stephens in the loss prevention room, the Plaintiff who was wearing a hooded sweatshirt stated that she was overheated and asked if she could take off her "hoodie". (D.E. 30, Snyder Depo. [Pg. 46], Page ID #169). The Plaintiff denies she agreed to a body search or that she ever volunteered to remove any of her clothing with the exception of the sweatshirt. (D.E. 30, Snyder Depo. [Pg. 40], Page ID#163).

Officer Chris Bayer of the City of Georgetown Police Department was dispatched to Kohl's to investigate an allegation of shoplifting. Officer Bayer was familiar with Kohl's and shoplifters in general. Bayer stated in his deposition that he had investigated at least fifteen (15) alleged shoplifting cases for Kohl's. (D.E. 35-4, [Plaintiff's] Response to [Defendant's] Motion for Summary Judgment, Bayer Depo., [p.25], Page ID # 795-800). .

When Bayer arrived, he sat directly across from the Plaintiff. Bayer testified that the loss prevention room was a small room ( (D.E. 35-4, [Plaintiff's] Response to [Defendant's] Motion for Summary Judgment, Bayer Depo., [p.26], Page ID # 795-800). Bayer proceeded to question the Plaintiff requesting her identification. He then Mirandized her and stated that he was investigating whether she was concealing Kohl's merchandise. (D.E. 35-6, [Plaintiff's] Response to [Defendant's] Motion for Summary Judgment, Pittman Depo., [p.29-30], Page ID # 807-814). Bayer stated that he spoke with Pittman and Tam Lung but only reviewed the surveillance video a "little bit" while waiting for information about the Plaintiff to come back from City of Georgetown Police dispatch.     (D.E. 35-4, [Plaintiff's] Response to [Defendant's] Motion for Summary Judgment, Bayer Depo., [p.31], Page ID # 795-800). Bayer would later testify that he reviewed the surveillance video again after Snyder left and stated as follows:

Q.      Was there any evidence on the videotape that would have established probable cause for you to believe that Bridgette Snyder had shoplifted anything?

A.      No.

(D.E. 35-4, [Plaintiff's] Response to [Defendant's] Motion for Summary Judgment, Bayer Depo., [p.37], Page ID # 795-800).

Snyder remembers Bayer repeatedly inquiring if she had any Kohl's merchandise. The Plaintiff repeatedly denied she had any merchandise. (D.E. 30, Snyder Depo. [Pg. 48], Page ID# 171). The Plaintiff remembers the conversation going nowhere and Bayer suggested a strip search:

A.      While I was sitting there with the police officer, we were just kind of going back and forth with the same thing over and over again.  And I said something along the lines of what now, because he had been sitting there for a while just with no – with nothing happening.

He says – he suggested the strip search to prove that I didn't have anything, the police officer did,.   And he asked the female Kohl's employee, Laurie ... if she would perform the search and she agreed.

(D.E. 30, Snyder Depo. [Pg. 51], Page ID#174).

The Plaintiff was escorted to the fitting room with Defendant employee, Laurie Stephens. When asked why she went, the Plaintiff stated, "I complied. I mean he's a police officer. I've been Mirandized. I don't have anything." (D.E. 30, Snyder Depo. [Pg. 52], Page ID#175). Bayer also testified that the Plaintiff was not free to leave while he was investigating the alleged theft. (Bayer Depo., Pg. 34).

11

The Plaintiff described the search with Laurie Stevens in the fitting room as follows:

> A.    …And she kind of reached over---she didn't touch, me I don't believe, …kind of reached towards me and pointed at it [shirt tag] and said "What's that?" And that's when I took off the tank.

(D.E. 30, Snyder Depo. [p. 67], Page ID#190)

The Kohl's employee still wasn't satisfied and she then requested that the Plaintiff was to  remove additional clothing until she was only clad in her underwear, but had to show that she was not hiding anything underneath.  (D.E. 30, Snyder Depo. [p.67], Page ID# 190)

Bayer and Pittman waited outside the fitting room door to the ensure that the Plaintiff would not leave. (D.E. 35-4, [Plaintiff's] Response to [Defendant's] Motion for Summary Judgment, Bayer Depo., [p.36], Page ID # 795-800). When the Plaintiff returned to the loss prevention room, no one would speak to her but Defendant Bayer spoke to Laurie Stephens about the search. The Plaintiff was asked to sit down in the chair and she overheard Pittman stated that he was going to be fired. (D.E. 30, Snyder Depo. [Pg. 76], Page ID#199). Pittman's statement was prophetic as both he and Tam Lung were terminated by Kohl's for failed shoplifting incidents or non-productive stops after the March 1, 2012 incident.  (D.E. 35, [Plaintiff's] Response to [Defendant's] Motion for Summary Judgment, Pittman Depo., [Pg. 10], Page ID# 807-814 ; Tam

Lung Depo., [p. 31], Page ID # 801-806). Upon return, the Plaintiff looked over and saw the surveillance footage being viewed by Pittman, Bayer and Tam Lung and the Plaintiff was allegedly told she had concealed a yellow shirt. (D.E. 30, Snyder Depo. [Pg. 79], Page ID#202). After a few more minutes in the loss prevention room, Defendant Bayer stated something to the extent of, "[w]ell, I guess since we didn't find anything, you are free to go." (D.E. 30, Snyder Depo. [Pg. 80], Page ID#203). The March 1, 2012 incident lasted approximately forty (40) minutes.

Snyder exited the store and went straight to her vehicle and called her boyfriend. Snyder stated that she felt "…a wide range of emotion [and that she] didn't feel [she] should be out driving when [she] wasn't focused on driving". (D.E. 30, Snyder Depo. [Pg. 88], Page ID#211). The Plaintiff sat in her car consoling herself for approximately thirty (30) minutes. The Plaintiff testified to other physical effects of the forty (40) minute nightmare. Snyder stated that she sat in her car trying to pull herself together for approximately thirty (30) minutes. (D.E. 30, Snyder Depo. [Pg. 88], Page ID#211).

On November 1, 2012, the Plaintiff filed her Complaint in Scott Circuit Court. The Plaintiff raised three (3) counts including false imprisonment, intentional infliction of emotional distress and a violation of her civil rights pursuant to 42 U.S.C. § 1983. After removal to Federal Court and discovery, the Defendants have moved for Summary Judgment. The Plaintiff now submits her Reply.

13

# ARGUMENT

## SUMMARY

### THE APPELLANT'S'S FACTS PRESENTED GENUINE ISSUE OF MATERIAL FACT AND LAW SUFFICIENT TO DEFEAT SUMMARY JUDGMENT.

At the outset, the Appellant wants to address the Coourt's Opinion concerning the the Appellant's 42 USC §1983 claims (D.E. _____ Memorandum, Opinion and Order, Page ID# _____). The Appellant and the City of Georgetown submitted an Agreed Order setting the federal claims on or about December 31, 2013 (D.E. 46, Notice of Voluntary Dismissal, Page ID# 929). The entry of the Summary Judgment Opinion reflected only the remaining state claims (D.E. _____ Memorandum, Opinion and Order, Page ID# _____). Despite what the record reflected, the District Court felt compelled to address the Appellant's federal claims, which were moot.

The Court's Opinion (D.E. _____, Page ID# _____) then offers an erroneous opinion concerning the application of KRS 433.236 more commonly known as the "shopkeepers' privilege." In reviewing the application of the statute, the Court ignored the clearly established Kentucky law on the application of KRS 433.236 as has been interpreted under Kentucky case law.

KRS 433.236 offers a merchant immunity for liability to a shoplifter if two things occur. (1) the Merchant must have "probable cause for believing" that goods have

been unlawfully taken and (2) the person taken into custody on probable cause must be detained in a "reasonable manner and for a reasonable length of time. If probable cause is established, the merchant must then act in a reasonable manner to the person detained to be afforded the limited protection of the law. In the Appellant's case, the Kohl's personnel failed to comply with either requirement of the statute.

## STANDARD OF REVIEW

At the time the Court reviewed the Appellee's Motion for Summary Judgment, the Appellant's Federal Claims had been settled. Therefore, despite the Court's Opinion addressing the Appellant's Federal Claims (D.E. 51, Memorandum, Opinion, and Order, Page ID# 953-955) the only remaining claims were state claims. The Court must review the District Court's interpretation and application of state law *de novo*. Ziegler v. IBP Hog Mkt., Inc, 249 F3d 509, 512 (6th Cir. 2001) *citing* Salve Regina College v. Russell, 499 US 225, 231, 113 L.Ed.2d 190, 111 S.Ct. 1217 (1991).

In Salve the Court stated [I]n decision after Eric, this court made clear that state law is to be determined in the same manner as federal court resolves an evolving issue of federal law" "with the aid of such light as [is] afforded by the materials for the decision at hand, and in accordance with the applicable principles for determining state law" Meredith v. Winter Haven, 320 US 228, 238 (1943).

In reviewing the District Court granting summary judgment *de novo*. The court must determine whether the District court applied the Kentucky law standard for summary judgment. The Kentucky Standard for Summary Judgment is stated in Steelvest, Inc. v. Scansteel Serv. Ctr., Inc., 807 S.W.2d 476 (Ky. 1991)

The Court must review the summary argument in favor of the non-moving party. After the review, summary judgment is appropriate only when the facts establish that "[O]nly when it appears impossible for the non-moving party to produce evidence warranting a judgment in his favor should the motion for summary judgment be granted." Steelvest *at* 482.

In reviewing the Appellant's facts and the Kentucky case law, the District Court committed error in granting the Defendant's Motion for Summary Judgment.

## I. THE KOHL'S DEPARTMENT STORE PERSONNEL LACKED PROBABLE CAUSE TO DETAIN THE APPELLANT.

KRS 433.236 requires that the merchant have probable cause for believing that goods had been unlawfully taken before one can be detained. The term probable cause can be applied for immunity for law enforcement based on a reasonable standard. However, the shopkeeper is not acting in the capacity of law enforcement. The shopkeeper/merchant is acting in the capacity of a private individual.

16

"In Kentucky, a private person may arrest only for a felony. A private person cannot make an arrest for a misdemeanor." According to this interpretation of KRS 433.236 of the shoplifting statute, the shoplifter must be released as soon as the goods are recovered. The merchant has no right to detain th person until the arrival of the police officer who can make an arrest. <u>SuperX Drugs of Ky., Inc. V. Rice</u>, Ky. App. 554 SW2d 903, 905-907 (1977).

Kohl's has established policy for their loss prevention personnel to establish the probable cause. The policies are specific to what a loss prevention employees must ascertain before detaining the suspected shoplifter. The facts of the Appellant's detention establish that Kohl's violated their own policy in the Appellant' detention on March 1, 2012.

Kohl's Merchandise Theft Policy concerning concealment of clothing states:

**A.    Merchandise Theft:**

**3.    Concealment**
You must observe the subject conceal the selected Kohl's merchandise. When concealment is not visible due to fitting rooms, refer to section 1-B describing the Fitting Room Concealment Policy.

In situations where concealment does not occur, (e.g., cart push-outs, attempts to wear merchandise out of a store that has not been purchased, etc.) it is acceptable to apprehend if steps 1, 2, 4 & 5 have been met.

**4.    Continuous Observation**
You must maintain continuous observation of the subject from the point of approach, selection, and concealment to the point of exit to ensure the

17

subject has not discarded the Kohl's merchandise, passed off the Kohl's merchandise to another, or paid for the Kohl's merchandise prior to exiting the store.

### 5.    Element of Intent upon Exit

Elements of intent must exist when the subject exits the store and before a Loss Prevention Associate can apprehend the subject. Elements of intent include, but are not limited to: concealment of Kohl's merchandise, removal or switching of price tags, the removal of Kohl's merchandise that has not been purchased, and passing all active registers with Kohl's merchandise that has not been purchased without making any attempt to pay for the items prior to exiting a store.

Whenever possible, it is preferred that the apprehension take place as the subject passes through the first set of doors to either enter the vestibule area and/or exit the store.

**BEFORE INITIATING ANY APPREHENSION FOR SUSPECTED MERCHANDISE THEFT, YOU MUST KNOW SPECIFICALLY WHAT ITEM(S) HAVE BEEN TAKEN, WHERE THE MERCHANDISE IS LOCATED ON THE SUBJECT, AND THAT THE SUBJECT IS IN POSSESSION OF THOSE ITEMS AT THE TIME OF EXIT.**

### B.    Fitting Room Concealment.

A count of merchandise taken into a, fitting room stall(s) compared to a subsequent count of merchandise removed from a fitting room stall(s) is not sufficient evidence to make an apprehension. **You must know specifically what items of Kohl's merchandise were taken into the fitting room stall(s) to determine exactly what Kohl's merchandise is missing after the subject has exited the fitting room stall(s).** (Emphasis added.)

### 3.    Departure of Fitting Room

Once the subject has departed the fitting room stall(s), Loss Prevention or a designated Executive/10-10 Support/Fitting Room Trained Associate must verify that the items believed to be concealed have not been left behind in the fitting room by checking all unoccupied stalls for the missing Kohl's merchandise.

You must be certain the subject did not pass the selected Kohl's Merchandise to a person in another stall.

You must also specifically identify all items the subject brought out upon exiting the fitting room stall(s). You must verify that the subject has not discarded any of the presumed concealed Kohl's merchandise onto a recovery rack or back to the sales floor.

Additional elements of intent should be identified and recovered to further ensure a theft has occurred. Additional elements of intent include, but are not limited to: defeated EAS tags or other security devices, detached price tags that match the presumed concealed Kohl's merchandise, bags or purses that are substantially larger upon exiting the fitting room stall(s), etc.

**BEFORE INITIATING ANY FITTING ROOM APPREHENSION, YOU MUST KNOW SPECIFICALLY WHAT ITEM(S) OF KOHL'S MERCHANDISE HAVE BEEN TAKEN AND THAT THE SUBJECT IS IN POSSESSION OF THOSE ITEMS AT THE TIME OF EXIT FROM THE STORE**.

(D.E. 35-2, [Plaintiff's] Response to [Defendant's] Motion for Summary Judgment, Exhibit 2, *Kohl's Loss Prevention Apprehension Guidelines & Ethical Standards*, dated February, 2011, Page ID# 762-781).

The Loss Prevention Officer, Pittman, when asked the amount of clothing the Appellant alleged took to the fitting room, he stated that he did not know. (D.E. 35-6, [Plaintiff's] Response to [Defendant's] Motion for Summary Judgment, Pittman Depo. [pp.60-61], Page ID# 807-814). Tam Lung observed the Appellant on video surveillance and did not know that the amount of clothing taken by the Appellant to fitting room as and could not state whether or not the clothing was left in the fitting room ( D.E. 35-5, [Plaintiff's] Response to [Defendant's] Motion for Summary

Judgment, Tam Lung Depo. [p. 49], Page ID# 801-806).  Clearly, the policy adopted by Kohl's was violated,.

There is not any dispute that the Kohl's employees violated their own policy on how to establish probable cause for the determination of a shoplifting incident.

The Appellee cited to the Trial Court the case of  Durruthy v. Pastor, 351 F.3d 1080 (11th Cir. 2003) as persuasive that their employees' failure to follow policy offered some sort of defense.  A close reading of  Durruthy Shows that it address immunity for a police officer from a violation of the Appellant's Fourth Amendment rights to be free from arrest.  Under Kentucky law, the analysis fails to serve as any authority to a civil detention of a shoplifter.

The Appellee may articulate its theory of probable cause, but it offers no defense.  The failure to follow their own policies, as well as their failure to articulate a reasonable basis for their suspicions of shoplifting constitutes genuine issues of fact in which a jury should address.

## II.    THE APPELLANT'S DETENTION AND STRIP SEARCH WERE NOT REASONABLE UNDER THE FACTS.

It is not disputed that the Appellee was asked to remove clothing by Kohl's personnel upon suspicion of shoplifting on March 1, 2012.  Whether she consented to the search after a period of detention or she was compelled to compelled to comply

with request for the strip search is a distinction without a purpose. The Appellant states she never consented to the intrusive search which creates a question of fact for the jury to address. <u>Shreve v. Jessamine Cnty. Fiscal Court</u>, 453 F.3d 681 (6th Cir. 2006). The question of consent aside, the jury must also decide if strip searching a suspected shoplifter is reasonable.

Kentucky law has a long case history of addressing the false imprisonment claim of an alleged shoplifter.

The test of false imprisonment requires the Plaintiff to establish that she was "detained unlawfully." <u>Great Atlantic and Pacific Tea Co. v. Smith</u>, 281 Ky 583, 136 S.W 2d 759, 767 (1940). "Ultimately the question of whether a detention was lawful is one of fact to be resolved by the jury under proper instruction from the trial court. <u>Birdsong v. Wal-Mart Stores</u>,74 S.W.3d 754 (Ky. Ct. App. 2001)

<u>In Great Atlantic and Pacific Tea Co.</u> the Court stated:

To constitute the injury of false imprisonment, there are two points requisite: (1) The detention of the person, and (2) the unlawfulness of such detention. *Newell on Malicious Prosecution, 56*; <u>Harper v. Howton</u>, 194 Ky. 840, 241 S.W. 329 (Ky. 1922).

*At* 767.

Any deprivation of the liberty of plaintiff by defendant, or any detention of him for however short a time by defendant without the plaintiff's consent and against his will, whether it was by actual violence, threats or

21

otherwise, constitutes an arrest. <u>Miller v. Ashcraft</u>, 98 Ky. 314, 32 S.W. 1085, 17 Ky. L. Rep. 894 (Ky. 1895)

Further, the rule is that in order to constitute a case of false imprisonment, it is essential that there be some direct restraint present. Any exercise of force, by which in fact the other person is deprived of his liberty and compelled to remain where he does not wish to remain or to go where he does not wish to go, is an imprisonment. <u>Johnson v. Norfolk & W. Va. R. Co.</u>, 82 W. Va. 692, 97 S.E. 189, 6 A.L.R. 1469 (W.Va. 1918). Or, as the offense is defined in <u>Great Atlantic & Pacific Tea Co. v. Billups</u>, 253 Ky. 126, 69 S.W.2d 5 (Ky. 1934), "any deprivation of liberty of one person by another or detention for however short a time without such person's consent and against his will, whether by actual violence, threats, or otherwise, constitutes 'arrest,'" or false imprisonment. *American Law Institute's Restatement of the Law of Tort, Vol. 1, Section 35, p. 66; 22 Am. Jur., Section 9, p. 359*; <u>Sternberg v. Hogg</u>, 254 Ky. 761, 72 S.W.2d 421 (Ky. 1934). *Also see* J. J. Newberry Co. v. Judd, 259 Ky. 309, 82 S.W.2d 359 (Ky. 1935)

In <u>Birdsong v. Walmart Stores</u>, Ky. App. 74 SW3d 754, 758 (2002) the Court addressed the reasonableness of the detention and false imprisonment of an alleged shoplifter under KRS 433.236. Citing <u>Walmart Stores v. Mitchell</u>, 877 SW2d 616, 618 Ky. App. (1994). The Court opined:

Ultimately, the question of whether a detention was lawful is one of fact to be resolved by a jury under proper instructions from the trial court. As in all cases involving questions of fact, the weight to be given to conflicting evidence and the credibility to be afforded each witness remains within the province of the jury. It is entitled to accept the plaintiff's version of the incident and reject the defendant's version or vice versa. On appeal, we view the evidence in the light most favorable to the prevailing party. If viewed in that light it supports the judgment, we must affirm.

The Court recognized a dispute in the versions of fact claimed by Birdsong and Mitchell which lead to the obvious conclusion that there genuine issues of material fact. There is obviously dispute between the Appellant and Appellee as to what occurred on March 1, 2012.

In Terry v. Jackson, 19 Fed. Appx. 377 (6th Cir. 2001) the Sixth Circuit rendered an opinion on the application of KRS 433. 236 to a false imprisonment claim.

> To establish a false imprisonment claim under Kentucky law, plaintiff must allege that she was detained for a period by an exercise of force, and that the detention was unlawful. *Wal-Mart Stores, Inc. v. Mitchell*, 877 S.W.2d 616, 617 (Ky. App. 1994). Kentucky's "shoplifting statute," Ky. Rev. Stat. § 433.236, provides a limited defense to a false imprisonment claim where a store employee detains a suspected shoplifter for a reasonable time in a reasonable manner based upon probable cause. Id. at 617-18. To establish a malicious prosecution claim under Kentucky law, plaintiff must allege the malicious institution or continuation by defendants of judicial proceedings without probable cause, which were terminated in plaintiffs favor, and damage as a result of the judicial proceedings. Broaddus v. Campbell, 911 S.W.2d 281, 283 (Ky. App. 1995).

Terry v. Jackson, 19 F. App'x 377, 379 (6th Cir. 2001).

The Court concluded "there is no basis for the Court's conclusion that liability cannot be imposed upon the individual defendants who themselves were alleged to have falsely imprisoned ... the Plaintiff." If the individual Defendants are liable clearly under the theory of *respondent superior*, the employer is liable. Kohl's has never

23

asserted the defense that Pittman, Tam Lung or Stephens were acting beyond the scope of their employment.

In Terry, the Court applied the decision of Walmart, Inc. V. Mitchell, 877 616, 617 (Ky., 1994). In Mitchell, the Kentucky Court of Appeals reviewed the facts of the detention of a fourteen year old alleged shoplifter. .

> Appellants' position is that the judgment should be vacated because Blackburn's detention as a suspected shoplifter, although it may have once have been considered false imprisonment, was lawful under Ky. Rev. Stat. (KRS) 433.236, Kentucky's "shoplifting statute." KRS 433.236 was enacted in 1958 to give merchants some assistance in dealing with shoplifters by providing a limited defense to a charge of false imprisonment. SuperX Drugs of Ky., Inc. v. Rice, Ky.App., 554 S.W.2d 903, 905 (1977).

The Mitchell decision also cited in Terry only offers the merchant a limited defense to the charge of false imprisonment, not an absolute defense awarded to Kohl's by the Trial Court's Opinion.

In McDonald's v. Ogburn, 309 SW3d 274 (Ky. Ct. App. 2009), the employee was falsely accused of stealing due to a hoax call. The McDonald's restaurant manager took the 18-year-old employee and searched for the alleged stolen money. The employee had a choice of being searched by the store manager or at a police station after an arrest. The young woman chose to be searched by the manager over a possible arrest.

Ogborn was then "methodically searched" as she was gradually convinced to disrobe. The young woman's nightmare continued while she was detained in the office naked and suffered other humiliation of a sexual nature. The call was later discovered to be a hoax and Ogborn retrieved her clothes.

Ogborn later filed suit against McDonald's. One of her claims was false imprisonment. In addressing Ogborn's claims of false imprisonment, the Court of Appeals found that Ogborn has stated a claim of false imprisonment. "Our cases define an imprisonment as being any deprivation of the liberty of one person by another or detention for however short of time without some person's consent and against his will, whether done by actual violence , a threat or otherwise." Grayson Variety Inc., v. Shaffer, 402 S.W.2d 424, 425 (Ky. 1966).

The Plaintiff's facts obviously does not arise to the outrage of Ogborn, but there are similarities. Like Ogborn, the Plaintiff was stripped searched. Whether it was the Plaintiff's idea and she did so voluntarily or whether she felt she was compelled to do so is a jury question.  The Court cannot decide the credibility of the witnesses' conflicting statements at the summary judgment stage.  Shreve v. Jessamine County Fiscal Court, 453 F.3d 681 (6th Cir. Ky. 2006)

When reviewing the incident in toto, the simple act of removing one's clothing on a suspicion of shoplifting is not reasonable. Additionally, like Ogborn, there is

sufficient evidence to conclude that more than "moral pressure" kept the Plaintiff in the loss prevention room and subsequent search of her person.

The Defendant Kohl's could also be liable for its failure to follow its own policy. Finding that retail workers have privilege under Michigan law to protect their employer's property from shoplifting, a negligence claim may be allowed if the business fails to follow its own policies. Woods v. American Eagle Outfitters, Inc, 1999 U.S. Dist. Lexis 14455.

The Defendant Kohl's argues that it was clear that the loss prevention employees had probable cause to detain the Plaintiff. Whether there was probable cause to detain the Plaintiff is a question of fact. Even if the Court finds there was probable cause, the inquiry then becomes if the imprisonment of the Plaintiff was reasonable.  She was asked if she would agree to a strip search to determine whether she was concealing Kohl's merchandise by Defendant Bayer and Kohl's employees. She was accompanied to the Kohl's; fitting room by a Kohl's employee who went inside the fitting room to conduct a search. The Defendant Bayer waited outside the fitting room door. ( (D.E. 35-4, [Plaintiff's] Response to [Defendant's] Motion for Summary Judgment, Bayer Depo., [p.46], Page ID # 795-800). Whether this scenario of outlandish events constitutes reasonable inquiry pursuant to KRS 433.236 of an alleged shoplifter allowing immunity under the statute or false imprisonment is a jury question

If the Trial Court had only reviewed Kentucky law prior to entering the Order granting summary Judgment, the Court would have easily found that the application of KRS 433. 236 creates more questions of fact than it warrants summary dismissal. The Appellant's forty minute detention, the Appellee's strip search of the Appellant, the lack of probable cause to detain the Appellant and the violation f policy clearly establishes questions of fact which a well instructed jury should address. The Court abused its discretion by making judgment calls on the credibility of the w of the witness which culminated in the statement STICK that conclusion by the Court alone was warrants reversal of the Court's decision.

## III.  THE PLAINTIFF SUFFERED INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

The Fourth Amendment protects "personal privacy and dignity against unwarranted intrusion by the State." Schmerber v. California, 384 U.S. 757, 767 (1966). Jail strip searches are "demeaning, dehumanizing, undignified, humiliating, terrifying, unpleasant, embarrassing, repulsive, signifying degradation and submission." Mary Beth G. v. Chicago, 723 F.2d 1263, 1272 (7th Cir. 1983). The United State Supreme Court has held that for these reasons a strip search is the kind of search that "instinctively give [courts] the most pause." Bell v. Wolfish, 441 U.S. 520, 558 (1979).

27

Embedded in the elements of an intentional infliction of emotional distress cause of action is the duty to refrain from intentional and reckless conduct. "While acts of commission

> While acts of commission more commonly serve to support the IIED claim, acts of omission have been held sufficient. Capital Holding Corp. v. Bailey, 873 S.W.2d 187, 196 (Ky. 1994) (failure to warn worker that pipes he would work on were asbestos insulated). With acts of commission, the duty is to refrain from certain conduct; with acts of omission, there must be a duty to act that was not met.

*At* 294.

In the Plaintiff's case, the Kohl's employees had a duty to follow their own policy concerning an alleged shoplifter. By the admission of the Loss Prevention Officers Pittman and Tam Lung, they failed to follow the policy. Additionally, Defendant Bayer testified on further review of the surveillance tape he would not have determined that the Plaintiff had committed any act constituting shoplifting. (D.E. 35-4, [Plaintiff's] Response to [Defendant's] Motion for Summary Judgment, Bayer Depo., [p.37], Page ID # 795-800).

Kentucky Courts have adopted the following standard for intentional infliction of emotional distress as follows: 1) the conduct of the Defendant must be outrageous in that it offends the generally accepted societal standards of decency and morality; 2) the conduct of the Defendant must be intentional and reckless in the sense that the

Defendant should know or have reason to know that is would cause the Plaintiff severe emotional distress, and 3) the Defendant's conduct must cause the Plaintiff severe emotional distress. Kroger Co., v. Wilgruber, 920 S.W. 2d 61, 65 (Ky. 1996).

**1.    The Strip Search of The Plaintiff Was Outrageous and Offends Against the Generally Accepted Standards of Decency and Morality**.

Kentucky Courts have long recognized the tort of intentional infliction of emotional distress to require outrageous conduct violating accepted standards of decency. The seminal case Craft v. Rice, 671 S.W.2d 247 (Ky. 1984) found that Ms. Craft established a claim when the tortfeasor kept her under surveillance, telling her on a CB radio that her husband would be put in jail and forcing Ms. Craft into an opposing lane of traffic. The Court also found that Mr. Craft had stated a claim of emotional distress by presenting only the fact that he had threats made to him over a CB radio.

In Kroger Co., v. Wilgruber, 920 S.W. 2d 61, 65 (Ky. 1996), *supra*, the Court addressed the claim in an employment setting. The Court held that Kroger's misleading of Wilgruber in numerous areas in his employment satisfied the cause of action. The Court opinion, "[c]onduct such as this constitute the very essence of the tort of outrage.*" At* 70.

The facts of the <u>Wilgruber</u> case presented a case of an employee who was employed by Kroger for over 32 years. Wilgruber's supervisor wrote a false evaluation alleging poor work performance. Due to the faulty evaluation, Wilgruber offered his resignation to Kroger. In order to receive his severance package, Kroger required Wilgruber to sign a release discharging Kroger from future liability. He was also told that if he resigned, there was a job in South Carolina as an assistant manager.

Wilgruber flew to South Carolina and found that there had never been a position for him. The effect of the betray led Wilgruber to an emotional breakdown.

At trial, Wilgruber testified to the emotional "living hell" he had experienced due to Kroger's actions. The jury awarded Wilgruber $180,400 for wrongful discharge and $70,000 for intentinal infliction of emotional distress. In reviewing the decision of the jury, the Supreme Court affirmed the Court of Appeals and the jury verdict of the Warren Circuit Court.

In <u>Whitworth v. Consol. Biscuit Co.</u>, 2007 U.S. Dist. LEXIS 25971 (E.D. Ky. Apr. 6, 2007), this Court distinguished <u>Wilgruber</u> when addressing Whitworth's claim of intentional infliction of emotional distress and outrage. The Court held, "[u]nlike the Defendants in Kroger, the Defendants in this case did not attempt to induce Whitworth to sign any release or other restrict her rights". Therefore, Whitworth could not support a claim.

The Plaintiff's case is much more akin to the <u>Wilgruber</u> decision than <u>Whitworth</u> or the causes cited the Defendant. The Supreme Court has repeatedly found that "strip searches" are humiliating and degrading. Coupled with the fact that the Defendant Kohl's employees failure to follow the Kohl's loss prevention manual and Defendant Bayer's obligation to comply with the constitutional restrictions the bounds of decency were crossed by the Defendant's on March 1, 2012.

**2.     The Defendant's Conduct was Reckless and the Defendants Should Have Known that it was Unlawful**.

The Plaintiff has already presented arguments establishing that the Defendant's conduct was reckless. The Defendant Pittman admitted that he had never been involved in a strip search of an alleged shoplifter prior to the Plaintiff. This was also stated by Tam Lung.  Defendants Pittman and Long admitted they violated Kohl's policy on March 1, 2012.

Defendant Bayer also stated that he had been to many calls of alleged shoplifting but had never engaged in a strip search. All Defendants have been trained on loss prevention policy and the extent of the law. KRS 433.236 is required to be applied in a reasonable manner not a reckless manner. The Defendant's conduct was reckless and was the cause of the Plaintiff's emotional distress.

3.    **The Plaintiff Suffered Severe Emotional Distress**.

The Defendant argues that the Plaintiff did not suffer severe emotional distress as a result of their conduct on March 1, 2012. The Plaintiff respectfully disagrees. The Court has recognized that the tort is not available for petty insults, unkind words and minor indignities. *See* Wilgruber. "Nor is it to compensate for behavior that is 'cold, callous, or lack sensitivity." Humana of Kentucky v. Seitz, 796 S.W.2d (1990). The tort is reserved to redress behavior that is truly outrageous, intolerable and which results in bringing one to his knees. *See* Osburne v. Payne, 31 S.W.3d 911, 914 (Ky. 2000).

The Plaintiff testified that she was embarrassed by the incident. The Plaintiff stated in response to the Defendant's questioning during her deposition as follows:

Q.    And I guess you've covered a little bit in your testimony already but I want to make sure I'm clear. You've mentioned that 'this whole situation was embarrassing to you. What specific moments did you feel embarrassed?

A.    I felt embarrassed when I got stopped at the door. I felt embarrassed when he accused me of shoplifting at the door. I felt embarrassed when we walked clear back to the loss prevention room from the door in front of customers.

I felt embarrassed, I was more angry in the loss prevention room as I was being accused. And I felt embarrassed that I got strip searched and that I had to get naked in front of somebody I didn't even – well, 90 percent naked in front of someone I didn't even know. I mean pretty much from start to finish.

(D.E. 30-2, Snyder Depo. [Pp. 148-149], Page ID# 271-272)

The incident on March 1, 2012 caused the Plaintiff severe emotional distress. The mere facts of one being strip searched by a stranger in of itself would bring even the strongest individual to their knees.

As stated in the facts, after Plaintiff was released from being detained and stripped searched, she was so shaken that she went immediately to her car and called her boyfriend. Plaintiff stated in her Deposition that she felt "completely frazzled" and was experiencing "…a wide range of emotion [and that she] didn't feel [she] should be out driving when [she] wasn't focused on driving". (Snyder Depo., Pg. 88-88). The Plaintiff sat in her car consoling herself for approximately thirty (30) minutes. The Plaintiff testified to other physical effects of the forty (40) minute nightmare. Snyder stated she was terrified that someone from her nursing school could have seen her there and that stress from the situation distracted her academically (Snyder Depo., Pg. 105-106). Additionally, Plaintiff began meeting with an instructor at her nursing school at least twice a week to talk about the events of March 1, 2012. Since then, Plaintiff is also experiencing difficulties enjoying daily activities such as shopping. In her deposition, she has stated that she is very uncomfortable when she is in a store. Not only has she stopped stopping at Kohl's completely,  she no longer try clothes on in any

store, rather, she "picks a size that's close…If it doesn't fit, [she] would have to take it back". (Plaintiff's Depo., Pg. 105-108)

The Plaintiff has satisfied the elements of an intentional infliction of emotional distress claim, therefore the Defendant's Motion for Summary Judgment on this claim should be overruled.

## CONCLUSION

The Court failed to review the Appellee's Motion for Summary Judgment in the light most favorable to the Appellant.  The Court failed to apply Kentucky Case law interpreting KRS 433.236 to the facts of the Appellant's case.

In reviewing the Court's decision *de novo* based on the Kentucky law that there is only one conclusion that the District Court's Order granting Summary Judgment is erroneous and demands reversal.  The Appellant respectfully requests that the Court remand her case to the Scott Circuit Court for just adjudication.

Respectfully Submit
*/s/Edward E. Dove*
HON. EDWARD E. DOVE
300 Lexington Building
201 West Short Street
Lexington, Kentucky 40507
(859) 252-0020

## <u>CERTIFICATE OF SERVICE</u>

This certifies that a true and accurate copy of the foregoing was served upon the following via ECF on this the 31st day of March, 2014:

Hon. Charles D. Cole
Hon. M. Todd Osterloh
STURGILL, TURNER, BARKER & MOLONEY
14th Floor
333 West Vine Street
Lexington, Kentucky 40507

Hon. Cynthia Blevins Doll
Hon. Emily N. Litzinger
FISHER & PHILLIPS LLP
220 West Main Street, Suite 2000
Louisville, Kentucky 40202

*/s/Edward E. Dove*
EDWARD E. DOVE

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Fed.R.App.P.32(a)(7)(C), the undersigned certifies that the foregoing Appellant Brief contains approximately 8795 words, inclusive, using proportional font Times New Roman at 14 points

*/s/Edward E. Dove*
EDWARD E. DOVE

## DESIGNATION OF RELEVANT LOWER COURT DOCUMENTS

| DOCUMENT | RECORD NO. |
|---|---|
| Notice of Removal - | D.E. 1 - 5 |
|    STATE COURT RECORD - COMPLAINT: | Page ID #: 5-12 |
| Defendant's Motion for Summary Judgment | D.E.33 |
| | Page ID # 413-414 |
|    Memorandum in Support | D.E. 33 - 2 |
| | Page ID # 416-441 |
| Plaintiff's Response to | D.E. 35 |
|    Defendant's Motion for Summary Judgment | Page ID # 734-760 |
| Exhibit 2 , Kohl's Loss Prevention Policy | D.E. 35-2 |
| | Page ID # 762-781 |
| Supplement - Partial Bayer Depo. | D.E. 35-4 |
| | Page ID # 795-800 |
| Supplement - Partial Tam Lung Depo. | D.E. 35 - 5 |
| | Page ID# 801-806 |
| Supplement - Partial Pittman Depo. | D.E. 35 - 6 |
| | Page ID # 807-814 |
| Notice of Voluntary Dismissal | D.E. 46 |
| | Page ID# 929-930 |
| Memorandum, Opinion and Order | D.E. 51 |
| | Page ID# 948-957 |
| Judgment | D.E. 52 |
| | Page ID# 958 |
| Notice of Appeal | D.E. 53 |
| | Page ID# 959 |