NO. 14-5157

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

### *BRIDGETTE SNYDER,*

Plaintiff – Appellant

**v.**

### *KOHL'S DEPARTMENT STORES, INC.*

Defendant – Appellee

On Appeal from the United States District Court
for the Eastern District of Kentucky, Central Division
At Lexington, Kentucky
No. 5:12-CV-00362 – Danny C. Reeves, *Judge*

## BRIEF OF APPELLEE
## KOHL'S DEPARTMENT STORES, INC.

**Cynthia Blevins Doll**
**Emily N. Litzinger**
**FISHER & PHILLIPS LLP**
220 W. Main Street, Suite 2000
Louisville, KY 40202
Telephone: (502) 561-3990
Facsimile: (502) 561-3991
E-mail: cdoll@laborlawyers.com
E-mail: elitzinger@laborlawyers.com
*Counsel for Defendant-Appellee,*
*Kohl's Department Stores, Inc.*

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| BRIDGETTE SNYDER, | ) | |
| | ) | CASE NO. 14-5157 |
| Plaintiff – Appellant | ) | |
| v. | ) | |
| | ) | |
| KOHL'S DEPARTMENT STORES, INC., | ) | |
| | ) | |
| Defendant – Appellee | ) | |
| | ) | |

## DISCLOSURE OF CORPORATE AFFILIATIONS
## AND FINANCIAL INTEREST

1.   Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

Yes.  Kohl's Department Stores, Inc. is a wholly owned subsidiary of Kohl's Corporation.

2.   Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  If Yes, list the identity of such corporation and the nature of the financial interest:

Yes.  Kohl's Department Stores, Inc. is a wholly owned subsidiary of Kohl's Corporation.

*/s/ Cynthia Blevins Doll*                          May 1, 2014
(Signature of Counsel)                          (Date)

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS ............................................................................... i

TABLE OF AUTHORITIES............................................................................ iv

STATEMENT IN SUPPORT OF ORAL ARGUMENT............................... ... 1

STATEMENT OF THE ISSUES .................................................................... 1

STATEMENT OF THE CASE ........................................................................ 2

COUNTER-STATEMENT OF THE FACTS.................................................... 4

    A.    Kohl's Employs Loss Prevention Personnel to Reduce Loss .............. 4

    B.    Snyder Exhibits Suspicious Behavior.................................................. 6

    C.    Pittman Asks Snyder to Discuss the Circumstances Surrounding Her Suspicious Behavior ...................................................................... 8

    D.    Officer Bayer of Georgetown Police Arrives at Kohl's...................... 10

    E.    Procedural Background ........................................................................ 16

SUMMARY OF ARGUMENT........................................................................ 17

ARGUMENT ................................................................................................... 18

I.    STANDARD OF REVIEW ...................................................................... 18

II.    KENTUCKY'S SHOPKEEPER PRIVILEGE STATUTE SHIELDS KOHL'S FROM LIABILITY ........................................... 19

    A.    Kohl's Had Probable Cause to Stop Snyder ........................................ 19

    B.    Kohl's Conduct Was Reasonable Under the Circumstances .............. 24

# TABLE OF CONTENTS
(cont'd)

Page

**III.  SNYDER WAIVED ANY ARGUMENT THAT A *PRIMA FACIE* CLAIM OF FALSE IMPRISONMENT EXISTS**...................................... 29

**IV.  THIS COURT SHOULD AFFIRM THE DISTRICT COURT'S DETERMINATION THAT SNYDER CANNOT ESTABLISH A *PRIMA FACIE* CLAIM OF FALSE IMPRISONMENT**........................ 30

    A.  There Is No Evidence Kohl's Intended to Confine Snyder ............... 31

    B.  Snyder Was Not Confined By Kohl's.................................................. 32

    C.  Snyder Suffered No Harm from Her Alleged Confinement.............. 32

**V.  SNYDER'S 42 U.S.C. § 1983 CLAIM IS BASELESS**............................ 33

    A.  Snyder Waived Her Section 1983 Claim............................................ 33

    B.  The District Court Correctly Concluded That the Record Does Not Support a Section 1983 Claim ...................................................... 34

        1.  Kohl's Was Not a State Actor or Acting Under the Color of State Law................................................................................ 34

        2.  Snyder Consented to the Search, and Kohl's Did Not Deprive Snyder of Any Rights Secured by the Constitution .......................................................................... 36

**VI.  THE DISTRICT COURT PROPERLY DISMISSED SNYDER'S INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM**............................................................................................... 38

    A.  Kohl's Conduct Was Reasonable Under the Circumstances ............. 40

    B.  Kohl's Did Not Act with Intent or Reckless Disregard, and Snyder Did Not Suffer Severe Emotional Distress ............................ 42

# TABLE OF CONTENTS
(cont'd)

Page

CONCLUSION ................................................................................. 43

CERTIFICATE OF COMPLIANCE .................................................. 44

CERTIFICATE OF SERVICE........................................................... 45

ADDENDUM.................................................................................... 46

APPENDIX ...................................................................................... 48

# TABLE OF AUTHORITIES

Page

## Cases

*Adickes v. S.H. Kress & Co.*,
  398 U.S. 144 (1970) .................................................................. 36

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) .................................................................. 18

*Banks v. Fritsch*,
  39 S.W.3d 474 (Ky. Ct. App. 2001) ......................................... 39

*Barrett v. Detroit Heading LLC*,
  311 Fed. Appx. 779 (6th Cir. 2008) ................................... 29, 34

*Birdsong v. Wal-mart Stores, Inc.*,
  74 S.W.3d 754 (Ky. Ct. App. 2001) ......................................... 27

*Brindley v. McCullen*,
  61 F.3d 507 (6th Cir. 1995) ............................................... 29, 34

*Buckner v. Bryant*,
  2013 U.S. Dist. LEXIS 41025 (E.D. Ky. Mar. 25, 2013) .......... 39

*Burton v. Kentucky State Police*,
  341 S.W.3d 589 (Ky. Ct. App. 2011) ....................................... 40

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) .................................................................. 18

*Center for Bio-Ethical Reform, Inc. v. City of Springboro*,
  477 F.3d 807 (6th Cir. 2007) .................................................... 37

*Chao v. Hall Holding Co.*,
  285 F.3d 415 (6th Cir. 2002) .................................................... 18

*Childers v. Geile*,
  367 S.W.3d 576 (Ky. 2012) ...................................................... 39

*Columbia Sussex Corp. v. Hay*,
  627 S.W.2d 270 (Ky. Ct. App. 1981) ....................................... 32

# TABLE OF AUTHORITIES
## (cont'd)

Page

*Craft v. Rice*,
671 S.W.2d 247 (Ky. 1984) ........................................ 41, 42, 43

*Craig v. Singletary*,
127 F.3d 1030 (11th Cir. 1997) .......................................... 23

*Durruthy v. Pastor*,
351 F.3d 1080 (11th Cir. 2003) .......................................... 23

*Gilbert v. Barkes*,
987 S.W.2d 772 (Ky. 1999) ............................................. 42

*Goebel v. Arnett*,
259 S.W.3d 489 (Ky. Ct. App. 2007) ................................... 40

*Grace v. Armstrong Coal Co.*,
2009 U.S. Dist. LEXIS 11315 (W.D. Ky. Feb. 13, 2009) ............... 39

*Grayson Variety Store, Inc. v. Shaffer*,
402 S.W.2d 424 ...................................................... 31, 32

*Great Atlantic & Pacific Tea Co. v. Billups*,
69 S.W.2d 5 (Ky. 1934) ................................................ 31

*Great Atlantic & Pacific Tea Co. v. Smith*,
136 S.W.2d 759 (Ky. 1939) ............................................ 30

*Illinois v. Gates*,
462 U.S. 213 (1983) ................................................... 19

*J.J. Newberry Co. v. Judd*,
82 S.W.2d 359 (Ky. 1935) ............................................. 30

*McDonald's Corp. v. Ogburn*,
309 S.W.3d 274 (Ky. Ct. App. 2009) ............................... 27, 28

*McKnight v. Rees*,
88 F.3d 417 (6th Cir. 1996) ........................................... 34

*Messer v. Robinson*,
250 S.W.3d 344 (Ky. Ct. App. 2008) ................................... 20

## TABLE OF AUTHORITIES
### (cont'd)

Page

*National Bond & Inv. Co. v. Whithorn*,
  123 S.W.2d 263 (Ky. 1938) ............................................................. 32

*Osborne v. Kenney*,
  399 S.W.3d 1 (Ky. 2012) ............................................................. 40

*Pennington v. Dollar Tree Stores, Inc.*,
  104 F. Supp. 2d 710 (E.D. Ky. 2000) ............................................. 20

*Rendell–Baker v. Kohn*,
  457 U.S. 830 (1982) ..................................................................... 35

*Shreve v. Jessamine County Fiscal Court*,
  453 F.3d 681 (6th Cir. 2006) ........................................................ 26

*Simescu v. Emmet County Dep't of Social Servs.*,
  942 F.2d 372 (6th Cir. 1991) ........................................................ 35

*Stump v. Wal-mart Stores, Inc.*,
  942 F. Supp. 347 (E.D. Ky. 1996) ................................................ 32

*SuperX Drugs of Kentucky, Inc. v. Rice*,
  553 S.W.2d 903 (Ky. Ct. App. 1977) ............................................ 22

*Taylor Drugstores, Inc. v. Story*,
  760 S.W.2d 102 (Ky. Ct. App. 1998) ............................................ 19

*United States v. Carter*,
  378 F.3d 584 (6th Cir. 2004) ................................................ 26, 37

*United States v. Coleman*,
  458 F.3d 453 (6th Cir. 2006) ........................................................ 37

*Waddle v. Sparks*,
  414 S.E.2d 22 (N.C. 1992) ............................................................ 42

*Wal-mart Stores, Inc. v. Mitchell*,
  877 S.W.2d 616 (Ky. Ct. App. 1994) ............................................ 27

*Wilhoite v. Cobb*,
  761 S.W.2d 625 (Ky. Ct. App. 1988), *overruled in part on other
  grounds, Osborne v. Kenney,* 399 S.W.3d 1 (Ky. 2012) ................... 40

# TABLE OF AUTHORITIES
## (cont'd)

Page

*Wolotsky v. Huhn,*
    960 F.2d 1331 (6th Cir. 1992) .................................................................. 35, 36

*Woods v. American Eagle Outfitters, Inc.,*
    1999 U.S. Dist. LEXIS 14455 (E.D. Mich. Aug. 31, 1999) ....................... 28, 29

*Wright v. Holbrook,*
    794 F.2d 1152 (6th Cir. 1986) .................................................................. 29, 34

**Statutes**

42 U.S.C. § 1983 ...................................................................................... *passim*

Ky. Rev. Stat. § 433.236 ......................................................................... *passim*

**Other Authorities**

1-3 <u>Moore's Federal Practice and Procedure</u> § 3.21 ....................................... 18

United States Constitution, Fourth Amendment ............................................ 16, 37

United States Constitution, Sixth Amendment ....................................................... 37

Fed. R. Civ. P. 56 ................................................................................................ 18

Restatement (Second) of Torts § 36 ...................................................................... 32

United States Constitution, Fourteenth Amendment ........................................ 33, 37

## STATEMENT IN SUPPORT OF ORAL ARGUMENT

The Appellee requests oral argument. The issues in this appeal are complex, and oral argument would be helpful to the parties and the Court.

## STATEMENT OF THE ISSUES

Appellant Bridgette Snyder ("Snyder") asks this Court to reverse the District Court's order granting summary judgment in favor of Appellee Kohl's Department Stores, Inc. ("Kohl's") because she contends there are genuine issues of material fact with regard to her claims. The undisputed evidence of record, however, plainly supports the District Court's decision.

Kohl's takes issue with Snyder's Statement of the Issues. Kohl's contends the issues on appeal are: (1) whether Snyder has waived the argument that the District Court erred in holding that the undisputed facts do not support of a *prima facie* claim of false imprisonment; (2) whether Snyder has also waived any argument that Kohl's violated 42 U.S.C. § 1983; (3) whether Kohl's is afforded protection from liability pursuant to Kentucky's Shopkeeper Privilege Statute, Ky. Rev. Stat. § 433.236; (4) whether the facts support a claim of false imprisonment; (5) whether Snyder is foreclosed from making a claim for damages for intentional infliction of emotional distress; and (6) whether the facts support a claim of intentional infliction of emotional distress.

1

Kohl's also takes issue with Snyder's Statement of the Issues because she alleges that Kohl's "violated" Kentucky's Shopkeeper Privilege Statute, Ky. Rev. Stat. § 433.236. That statute creates an *affirmative defense* for Kohl's. Kohl's cannot be held liable for any "violation" of that law.

## **STATEMENT OF THE CASE**

Snyder entered Kohl's retail location in Georgetown, Kentucky on the evening of March 1, 2012. During her visit, she exhibited suspicious behavior. She then took merchandise into a fitting room, where the sounds of a hard security tag being "popped" were heard. Snyder then hurriedly attempted to leave the store. Kohl's loss prevention personnel approached her near the door and asked to speak to her. Snyder voluntarily returned to the loss prevention office and spoke to Kohl's personnel there. Pursuant to Kohl's policies, Kohl's loss prevention personnel contacted the Georgetown Police Department. Shortly thereafter, Georgetown Police Officer, Defendant Christopher Bayer ("Bayer"), arrived and questioned Snyder. Snyder attempted to remove her sweatshirt at least once and possibly twice while in the loss prevention office.

Either on his own or in response to a suggestion by Snyder that "you guys can search me," Officer Bayer suggested that Snyder could go with a female Kohl's associate into the fitting room to show that she did not have any merchandise. While in the fitting room, Snyder proceeded to remove some of her

2

clothing without any request or verbal direction. The female Kohl's associate never touched Snyder or directed Snyder to remove her clothing. No merchandise was found, and Bayer advised Snyder she could leave. The entire episode lasted approximately forty minutes.

Despite her voluntary conduct, Snyder later filed suit against the City of Georgetown, Officer Bayer and Kohl's alleging: (1) false imprisonment; (2) violation of 42 U.S.C. § 1983 ("Section 1983"); and (3) intentional infliction of emotional distress. (Complaint, R.E. 1, Page ID #5-11).

After discovery, all Defendants moved for summary judgment. The claims against the City of Georgetown and Officer Bayer were resolved before the Court could rule on their motion. (Notice of Dismissal, R.E. 46, Page ID #929). The claims against Kohl's, however, remained. On January 15, 2014, the District Court granted Kohl's Motion for Summary Judgment, finding that the undisputed facts do not support a claim for false imprisonment. (Opinion, R.E. 51, Page ID #948-57). The District Court also held that the uncontested facts established that Kohl's had probable cause to stop Snyder and that Kohl's did so in a reasonable manner and time so as to afford it protection under Kentucky's Shopkeeper Privilege Statute, Ky. Rev. Stat. § 433.236.

Moving to her Section 1983 claim, the Court held that Snyder had waived the question of whether Kohl's could have liability under that statute because she

3

failed to address it in her response to Kohl's motion.  At any rate, ruled the Court, the undisputed facts also made clear that Kohl's was not a state actor.  Finally, the District Court granted summary judgment on the Complaint's count for intentional infliction of emotional distress because it is a gap-filler tort and damages for emotional distress are available as a remedy for false imprisonment.  Even if she were allowed to recover, the Court concluded that the facts did not support a *prima facie* claim of intentional infliction of emotional distress because Kohl's conduct did not rise to the level outrageousness required by the law.  No Kohl's employees suggested that Snyder remove any of her clothing, and her actions were voluntary.  For the following reasons, this Court should affirm the District Court's decision.

## COUNTER-STATEMENT OF THE FACTS

### A.     Kohl's Employs Loss Prevention Personnel to Reduce Loss.

Kohl's is a family-focused, value-oriented specialty department store offering moderately priced, exclusive and national brand apparel, shoes, accessories, beauty and home products.  (Affidavit of Richard Bell, hereafter "Bell Aff.," R.E. 31-3, Page ID #380-82).

In an effort to reduce loss in its retail locations, Kohl's employs loss prevention personnel who specialize in the recovery of merchandise and apprehension of shoplifters.  (*Id.* at Page ID #380).  Accordingly, Kohl's maintains Loss Prevention Apprehension Guidelines and Ethical Standards (the

"Guidelines") which contain procedures for loss prevention personnel to follow in the course of their duties. (Guidelines, R.E. 31-4, Page ID #383-402). The Guidelines describe in detail the circumstances in which Kohl's loss prevention personnel may approach someone in a store regarding suspicious behavior or possible shoplifting. The Guidelines also outline how to deal with a shopper who may have concealed merchandise in the fitting room. Loss prevention personnel are trained on these Guidelines and also undergo on-the-job training with loss prevention managers when they begin working for Kohl's. (*Id;* Deposition of Michael Pittman (hereafter "Pittman Depo."), R.E. 33-3, Page ID #456, 533; Deposition of Michael Tam Lung (hereafter "Tam Lung Depo."), R.E. 33-4, Page ID #571-73).

There are no cameras in fitting rooms, and customer behavior inside a fitting room is not allowed to be directly observed. Because there is no direct observation, loss prevention personnel must rely on their observations about customer behavior before entering and after leaving a fitting room. The Guidelines provide that loss prevention personnel should identify the merchandise the customer has selected, observe the person enter the fitting room and then, after the patron leaves the fitting room, verify that the items believed to have been concealed have not been left behind. (Bell. Aff. ¶ 5., R.E. 31-3, Page ID #381). In addition, the loss prevention officer should pay attention to "elements of intent,"

5

such as defeated security tags.  After loss prevention personnel have followed these steps, and once the patron leaves the fitting room, loss prevention personnel must wait until the shopper attempts to exit the store without checking out before they approach the person.  (Pittman Depo., R.E. 33-3, Page ID #506-07; Bell Aff. ¶ 5, R.E. 31-3, Page ID #380).

**B.**     **Snyder Exhibits Suspicious Behavior.**

Snyder testified that on March 1, 2012, at approximately 7:00 p.m., she arrived at the Kohl's Georgetown store looking for several new outfits. (Deposition of Bridgette Snyder (hereafter "Snyder Depo."), R.E. 30-1, Page ID #141-42).  Snyder first went to the Women's section of the store to shop and then began browsing the Junior's section.  Snyder believes she picked up approximately six items, including several pairs of jean shorts, a pair of jeans, a jacket and a couple shirts, and walked towards the Junior's section fitting room.  (*Id.* at Page ID #143-44).

On duty that evening were Loss Prevention personnel Michael Pittman ("Pittman") and Michael Tam Lung ("Tam Lung").  Pittman and Tam Lung were observing the Junior's section of the store because it is a high theft area.  (Tam Lung Depo., R.E. 33-4, Page ID #584).  While Snyder was browsing the Junior's section, Pittman observed her pick up multiple items of merchandise quickly without paying attention to price or size.  Based on their training and experience,

6

Pittman and Tam Lung know this is suspicious behavior. (*Id.*) Accordingly, Pittman, who was on the sales floor, asked Tam Lung, who was in the loss prevention office, to focus the closed circuit television cameras on Snyder. Tam Lung did so and began to watch events on the camera monitors. (*Id.* at Page ID #464-65, 581-83; see also Kohl's Incident Report, R.E. 31-5, Page ID #403).[1]

While observing Snyder, Pittman and Tam Lung also noticed a male patron nearby on a cell phone, which they found suspicious since shoplifters sometimes have accomplices or lookouts. (Pittman Depo., R.E. 33-3, Page ID #516-17, 529; Deposition of Christopher Bayer (hereafter "Bayer Depo."), R.E. 33-5, Page ID #593; Tam Lung Depo., R.E. 33-4, Page ID #625-26).

Pittman and Tam Lung continued to observe Snyder and watched her enter the fitting room area with numerous items. Pittman did not enter the fitting room, but took note of which stall Snyder entered. He then stood outside the fitting room. While Snyder was in the dressing room, Pittman overhead distinctive popping sounds. Based on his years of experience,[2] Pittman knew these were the

---

[1] Snyder asserts that Pittman stated that he observed Snyder for approximately one minute. (Appellant's Brief, Page ID #12). In this portion of his deposition, Pittman was referring to the amount of time he observed Snyder *before he called Tam Lung to focus the cameras on her*, not to the total amount of time he observed her. (Pittman Depo., R.E. 33-3, Page ID #465-66).

[2] Pittman had served in loss prevention at several stores including Dillard's and Elder-Beerman before Kohl's and he had been a loss prevention supervisor at Kohl's since 2009. (Pittman Depo., R.E. 33-3, Page ID #452-60).

sounds of someone detaching the hard, EAS security tags from merchandise. Pittman and Tam Lung then observed Snyder exit the fitting room with no merchandise in her hands and begin "fast walking" towards the store's exit doors. (Pittman Depo., R.E. 33-3, Page ID #470, 535, 538; Tam Lung Depo., R.E. 33-4, Page ID #585-86).

After Snyder left the fitting room, Pittman quickly checked the stall she was in.  Pittman did not find any of the merchandise Snyder took into the room.[3]  (*Id.*) Pittman has often seen shoplifters wear multiple items of clothing under their own clothes, in order to leave with the items without paying.  (Pittman Depo., R.E. 33-3, Page ID #469, 536).  Pittman then followed Snyder and approached her as she exited the building.  (*Id.*; Snyder Depo., R.E. 30-1, Page ID #146).

### C.    Pittman Asks Snyder to Discuss the Circumstances Surrounding Her Suspicious Behavior.

As Snyder began to exit the store, Pittman approached her, identified himself by name and stated he was "Kohl's loss prevention."  He asked if she knew why he stopped her, and she said "no, I didn't steal anything."  He then asked Snyder, "Would you mind to come back to the office" to discuss the matter.  She said "not

---

[3] In her brief, Snyder indicates that it is "store practice" to leave items in the fitting room.  (Appellant's Brief, Page ID #10).  Though immaterial, it should be noted that this assertion is not  supported by testimony or authority.

a problem." (Pittman Depo., R.E. 33-3, Page ID #474-75, 496; Snyder Depo., R.E. 30-1, Page ID #146-48).

It is undisputed that in asking her to return to the loss prevention office, Pittman did not yell at or threaten Snyder, he was not in any type of uniform and he did not have or show a weapon. Pittman never touched her. Nor did Pittman block Snyder from leaving or say she could not leave. In fact, at no time did anyone ever tell Snyder she was not free to leave. (Snyder Depo., R.E. 30-1, Page ID #149-53; Pittman Depo., R.E. 33-3, Page ID #481-82). **In response to Pittman's request, Snyder admits she willingly accompanied him to the loss prevention office. (Snyder Depo., R.E. 30-1, Page ID #153).**

After returning to the loss prevention office, Snyder entered the office with Pittman, Tam Lung and a female Kohl's employee named Laurie Stevens ("Stevens"). Snyder sat down in the room with the others, and Pittman asked whether she had taken any merchandise. Snyder denied taking merchandise. (*Id.* at Page ID #148, 161-62). According to Pittman and Tam Lung, Snyder became somewhat "loud and irate" as they talked. When that occurs, it is Pittman's and Tam Lung's practice to call local police. Tam Lung made the call. (Pittman Depo., R.E. 33-3, Page ID #479; Tam Lung Depo., R.E. 33-4, Page ID #588-89, 592).

While waiting for the police to arrive, it is undisputed that Snyder started to take off her sweatshirt. According to Snyder, she did so because she was hot. But it is also undisputed that Kohl's personnel stopped Snyder from removing her sweatshirt, telling her that it was against Kohl's policy to allow a patron to remove any article of clothing while talking to loss prevention. (Snyder Depo., R.E. 30-1, Page ID #162-63; Pittman Depo., R.E. 33-3, Page ID #485, 531; Tam Lung Depo., R.E. 33-4, Page ID #589-90).

The entire time Snyder was in the loss prevention office, no one took any of her property, and no one ever blocked the door. Rather, Snyder admitted in her deposition that she had access to the door at all times and could have left through it. (Snyder Depo., R.E. 30-1, Page ID #159-61, 184-85). Pittman and Tam Lung confirmed in their testimony that Snyder was free to leave, stating that if she chose to leave, they would not have been able to make her stay. (Pittman Depo., R.E. 33-3, Page ID #481; Tam Lung Depo., R.E. 33-4, Page ID #580). Everyone agrees that Snyder never asked or tried to leave. (Snyder Depo., R.E. 30-1, Page ID #161; Bayer Depo., R.E. 33-5, Page ID #708).

### D.    Officer Bayer of Georgetown Police Arrives at Kohl's.

Shortly after Kohl's informed Snyder that it was calling the local authorities, Officer Christopher Bayer of the Georgetown police arrived. Bayer entered the loss prevention office, sat down across from Snyder and asked if she understood

why she was in the office.  Snyder responded that she was suspected of shoplifting.

Bayer told her that he was going to give her an opportunity to tell the truth, asked

her if she had stolen anything, and she responded, "No."  At this point, Bayer

advised Snyder of her Miranda rights and asked for her identification to run a

background check.  Snyder said she understood her Miranda rights.  (Snyder

Depo., R.E. 30-1, Page ID #169-70; Bayer Depo., R.E. 33-5, Page ID #682-83).

Soon after Officer Bayer ran a background check, Snyder once again,

without provocation, began to lift her sweatshirt and said "you guys can search

me."  As she lifted her shirt, Officer Bayer and the Kohl's employees again told

her not to do so.  At this point, Officer Bayer told Snyder "if that's what you want

to do, you can go with Laurie [Stevens to the fitting room]."  (Bayer Depo., R.E.

33-5, Page ID #684-85; Pittman Depo., R.E. 33-3, Page ID #485-86, 531; Tam

Lung Depo., R.E. 33-4, Page ID #595-96, 625-26).

According to Bayer, Pittman and Tam Lung, Snyder said yes, she would go

with Laurie Stevens to the fitting room.  (Tam Lung Depo., R.E. 33-4, Page ID

#596).  Officer Bayer did not threaten to arrest Snyder if she did not go with Laurie

Stevens.  Instead, he merely followed up her actions in trying to remove her

sweatshirt by asking if she would like to go with Stevens. (Bayer Depo., R.E. 33-

5, Page ID #684-86; Snyder Depo., R.E. 30-1, Page ID #174-75, 177-78; Pittman

Depo., R.E. 33-3, Page ID #487, 521; Tam Lung Depo., R.E. 33-4, Page ID #629).

11

In her deposition, Snyder denied saying "you guys can search me," but she did admit lifting her shirt at least once.  (Snyder Depo., R.E. 30-1, Page ID #162-63).  According to Snyder, it was Officer Bayer who suggested that Snyder agree to a search, not her.  However, Snyder admitted that she did not recall the officer's words.  Snyder's contention in her brief that Bayer "suggested a strip search" is contradicted by her own testimony – although she initially stated that, she later backtracked and testified she did not recall Bayer using the term "strip search." (Snyder Depo., R.E. 30-1, Page ID #174-75).

Snyder testified that Officer Bayer then asked Laurie Stevens to go with Snyder to the Junior's fitting room and that Snyder agreed to go.  (Snyder Depo., R.E. 30-1, Page ID #173-76).  Neither the officer nor anyone from Kohl's told her she had to do this or she would not be able to leave.  Instead, Snyder voluntarily complied with Bayer's request and at no point asked to leave or objected to the request that she go to the dressing room with Stevens.  (*Id.* at Page ID #177-78). **Most importantly for this appeal, it is undisputed that no Kohl's employee suggested or asked Snyder to return to the fitting room or to remove any article of clothing.** (*Id.* at Page ID #183).

Snyder testified that she agreed to go with Laurie Stevens to the fitting room to prove her innocence:

> Q.    Okay.  So you said what's next and he suggested –
> "he" as in the police officer suggested something to the

effect you can do a search to show that you don't have anything and you said yes or nodded your head? What was your response?

A.    I'm not exactly sure what my response was – from what I recall, it was something along the lines of "if I have to."

**Q.    Did any Kohl's employee suggest, you know, why don't you go into a fitting room and remove some of your clothing or anything like that?**

**A.    No.**

Q.    It was the police officer that suggested any sort of removal of any clothing?

A.    Right.

Q.    Did he specifically say remove clothing or just certain –

A.    I don't recall exactly.

Q.    But it was your understanding you were to remove –

A.    Yes

Q    --articles of clothing?

A.    Yes.

Q.    Did the police officer ever say you have to remove your clothing?

A.    I don't remember the exact wording, if it was a demand or a request.

Q.    I mean, what was your understanding? Was it –

A.    --My understanding was that this is how that is – this is how I'm going to prove that I don't have anything.

Q.     Did anybody physically force your to remove your clothing?

A.     No one touched me.

Q.     At all?

A.     I don't believe so.

Q.     At this point did anybody have any of your property?

A.     At this point, no, nobody had my property until – with the exception of my ID when he ran my background check, until I was in the fitting room.

Q.     Okay.  At the time of the request to remove your clothing, no one had your property?

A.     No, it was sitting on the table beside me.

**Q.     So it sounds like you agreed to remove your clothing in an effort to prove your innocence?**

**A.     I felt that it was necessary to remove my clothing to prove my innocence.**

**Q.     So is that a yes?**

**A.     Yes.**

(Snyder Depo., R.E. 30-1, Page ID #183-85) (emphasis added).

Snyder then entered the fitting room with Stevens.  No one else accompanied them.  In a closed stall in the fitting room, Snyder removed her sweatshirt and placed it on the floor.  Stevens then bent down and touched the sweatshirt on the floor, patting the pockets.  After that, Snyder removed her long-sleeved tee shirt.  (Snyder Depo., R.E. 30-1, Page ID #187-89).  Stevens, however,

14

made no verbal command or motion for Snyder to do so; rather, Stevens merely stood in the room and waited. Stevens picked up long-sleeved tee shirt and patted it for merchandise. (*Id.* at Page ID #189-90).

Snyder blatantly misstates the record when she alleges that Stevens asked her to remove her clothing. (Appellant's Brief, Page ID #11). This assertion is directly contradicted by Snyder's own testimony. Snyder specifically testified that Stevens did not ask, request or direct her to remove any clothing. (Snyder Depo., R.E. 30-1, Page ID #195-96).

Next, Snyder removed her tank top and sweatpants. Snyder then grabbed her own bra and shook it, showing Stevens she had no hidden merchandise. Again, Stevens did not request this action; Snyder did so on her own. Snyder never removed her bra or underwear. Snyder then got dressed, and she and Stevens exited the fitting room. Stevens shook her head at Bayer, and all three returned to the loss prevention office. According to Snyder, the total time in the fitting room was less than ten minutes. (*Id.* at Page ID #191-95, 198).

After Snyder and Stevens returned to the office, Pittman apologized for the inconvenience, and Officer Bayer walked Snyder out of the building. (*Id.* at Page ID #200, 202; Pittman Depo., R.E. 33-3, Page ID #490; Tam Lung Depo., R.E. 33-4, Page ID #599). After Snyder left, Pittman checked the fitting rooms again and found merchandise several stalls away from the one Snyder had occupied. The

hard security tag had been ripped off one pair of jean shorts, damaging the shorts. The tag had then been placed into the back pocket of another pair of shorts. (Pittman Depo., R.E. 33-3, Page ID #470, 493-94; Tam Lung Depo., R.E. 33-4, Page ID #613-14; Bayer Depo., R.E. 33-5, Page ID #694-95).  Officer Bayer's review of the situation suggested to him that the Kohl's employees were "onto something and (Snyder) threw the merchandise and was spooked."  (Bayer Depo., R.E. 33-5, Page ID #703).

At no time during the entire incident – either while Snyder walked with Pittman to the loss prevention office, while she was in the loss prevention office, when she was in the fitting room with Stevens or thereafter – did anyone touch Snyder or threaten her.  Neither the Kohl's employees nor Officer Bayer ever raised their voices.  (*Id.* at Page ID #149-50 160-61, 184, 190, 196; Bayer Depo., R.E. 33-5, Pages ID #718; Tam Lung Depo., R.E. 33-4, Page ID #627).  There was, of course, no criminal prosecution stemming from these events.  The entire incident lasted approximately forty minutes.  (Snyder Depo., R.E. 30-1, Page ID #181).

### E.    Procedural Background.

In her Complaint, Snyder alleged that Kohl's falsely imprisoned her, violated her Fourth Amendment rights under 42 U.S.C. § 1983 and intentionally subjected her to severe emotional distress.  Kohl's filed a Summary Judgment

Motion on all three of Snyder's claims against it.  The District Court granted Kohl's Summary Judgment Motion, and Snyder appealed.

## SUMMARY OF ARGUMENT

The District Court properly granted summary judgment to Kohl's on all counts.  As an initial matter, Snyder waived any argument with regard to whether the undisputed facts support a *prima facie* claim of false imprisonment because she did not mention this issue in her opening brief.  Snyder has also waived any claim that Kohl's violated 42 U.S.C. § 1983 for the same reason.

But if the Court considers the substance of the District Court's decision dismissing the claims, the record establishes that Snyder does not have a cognizable claim of false imprisonment.  Kohl's is shielded from liability under Kentucky's Shopkeeper Privilege Statute because Kohl's had probable cause to stop Snyder and its actions were reasonable in time and manner.  If the Court proceeds to the merits of the false imprisonment claim, the facts do not support a *prima facie* case of false imprisonment because it is undisputed that Snyder's actions were voluntary and Kohl's did not unlawfully confine her on its premises.

As for her 42 U.S.C. § 1983 claim, as the District Court correctly held, there is no evidence that Kohl's was acting under the color of state law or that it deprived her of any rights guaranteed under the United States Constitution. Further, Snyder is not entitled to recover for intentional infliction of emotional

distress because such damages are recoverable as a part of her false imprisonment claim. Finally, the undisputed facts do not support her intentional infliction claim. There is no evidence she suffered *severe* emotional distress or that Kohl's actions were reckless or outrageous as defined by Kentucky law. The District Court properly held that as a matter of law all of Snyder's claims fail. This Court should affirm the judgment of the District Court.

## **ARGUMENT**

### I.    **STANDARD OF REVIEW.**

This Court reviews the District Court's summary judgment decision *de novo*. Summary judgment is required when "the movant shows that there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Chao v. Hall Holding Co.*, 285 F.3d 415, 424 (6th Cir. 2002). Here, the District Court correctly held that there was no genuine dispute of material fact and that Kohl's was entitled to judgment as a matter of law.[4]

---

[4] Snyder's brief displays a basic misunderstanding of federal court practice when she argues that the Court should review the evidence under *Kentucky's* summary judgment standard. A federal court applies federal procedural law, whether the jurisdictional basis for the case is diversity or, as here, federal question. 1-3 Moore's Federal Practice and Procedure § 3.21. Accordingly, this Court should review this case pursuant to Fed. R. Civ. P. 56(a).

## II.  KENTUCKY'S SHOPKEEPER PRIVILEGE STATUTE SHIELDS KOHL'S FROM LIABILITY.

In Kentucky, store owners like Kohl's are protected from false imprisonment claims like Snyder's when they have grounds to stop a customer and do so in a reasonable manner.  Pursuant to Ky. Rev. Stat. § 433.236(1), a store owner may detain a customer "in a reasonable manner for a reasonable length of time" if there is "probable cause for believing that goods held for sale by the merchant have been unlawfully taken" by the shopper.  The undisputed facts of record support the District Court's holding that Kohl's is shielded from liability under Kentucky's Shopkeeper Privilege Statute because it had probable cause to stop Snyder and it did so in a reasonable time and manner.

### A.    Kohl's Had Probable Cause to Stop Snyder.

Kohl's had probable cause to stop Snyder regarding its suspicion of stolen goods.  Although not defined by the statute, probable cause ordinarily refers to a determination that, based on a totality of the circumstances, there is a "fair probability" that an offense has occurred or that items may be in a location that is going to be searched.  *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983).  The District Court properly applied this test. (Opinion, R.E. 51, Page ID #950).

Kentucky courts have upheld the use of the shopkeeper's defense in circumstances where patrons removed items from a store or placed merchandise on their person or in personal items in an attempt to conceal them.  *Taylor Drugstores,*

19

*Inc. v. Story,* 760 S.W.2d 102 (Ky. Ct. App. 1998); *Messer v. Robinson,* 250 S.W.3d 344 (Ky. Ct. App. 2008) (holding storeowner had objective probable cause when security alarm sounded). Courts have also recognized that probable cause can be established by admission or agreement by the parties. *Pennington v. Dollar Tree Stores, Inc.,* 104 F. Supp. 2d 710 (E.D. Ky. 2000).

The undisputed evidence establishes that Kohl's had probable cause to stop Snyder. Snyder herself admitted that if Kohl's Loss Prevention personnel observed her enter the fitting room, overheard popping noises that sounded like security tags being removed and then could not locate the merchandise, they had reason to believe she shoplifted. (Snyder Depo., R.E. 30-1, Page ID #208). Snyder has conceded that Kohl's had a reasonable basis to stop her and investigate further.

Setting aside Snyder's admission, there was ample objective evidence in the record that Kohl's loss prevention personnel had probable cause to ask Snyder to stop and speak with them based on the following:

- Pittman and Tam Lung observed her in a high-theft areas of the store rapidly picking up items without paying attention to size or price.

- Pittman asked Tam Lung to focus the store's closed-circuit cameras on Snyder.

- While watching Snyder, Pittman and Tam Lung observed suspicious behavior by a male who was nearby on a cell phone and could have been a look-out or accomplice.

- Tam Lung and Pittman watched Snyder enter the fitting room with a number of items of clothing. Pittman noted the specific fitting room Snyder used.

- While Snyder was in the fitting room, Pittman overheard the sound of a security tag being detached. This was later confirmed when Pittman located the detached security tag and damaged shorts.

- Snyder exited the fitting room with no merchandise in her hands and rapidly proceeded to the exit. Pittman and Tam Lung are aware that patrons sometimes wear merchandise under their own clothing in an attempt to leave the store without paying for it.

- Pittman checked the stall Snyder had used but did not find the clothing Snyder had taken into the fitting room.

The District Court correctly recognized that this evidence gave Kohl's probable cause to stop Snyder. (Opinion, R.E. 51, Page ID #951-52).[5]

Snyder cites to *SuperX Drugs of Kentucky, Inc. v. Rice*, 553 S.W.2d 903 (Ky. Ct. App. 1977), arguing that it stands for the proposition that a "merchant has no right to detain the person until the arrival of the police officer who can make an arrest." (Appellant's Brief, Page ID #24). It is true that *SuperX* held that the Shopkeeper Privilege Statute allowed a merchant to detain a patron only until the

---

[5] Snyder cites to a portion of Officer Bayer's deposition in which he states that the videotape alone did not establish probable cause. (Appellant's Brief, Page ID #18). But she neglects to point the Court to Bayer's testimony that it was the *totality of the circumstances*, including the information he received from Pittman and Tam Lung, that created probable cause. (Bayer Depo., R.E. 33-5, Page ID #689-95).

merchandise is recovered.   However, the year after *Super X*, the Kentucky legislature modified the statute to clarify that a merchant may keep the person while waiting for police to arrive.[6]  The statute was amended to state:

> The recovery of goods taken from the mercantile establishment by the person detained or by others shall not limit the right of the persons named in subsection (1) of this section to detain such person for peace officers or otherwise accomplish the purposes of subsection (1).

Ky. Rev. Stat. § 433.236(2).   Accordingly, Snyder's reference to *Super X* is misplaced.

In support of her argument, Snyder points to Officer Bayer's testimony that she was not free to leave for a brief period while he investigated the matter. (Appellant's Brief, Page ID #18).   It is clear from Officer Bayer's testimony, however, that he was referring to the question of whether Snyder was legally detained *by him in his official capacity as a police officer*.   He was not discussing whether Kohl's had any ability to keep Snyder on the premises or describing any actions by Kohl's which led Snyder to believe she was not free to leave.  (Bayer Depo., R.E. 33-5, Page ID #687-89).

Snyder also alleges that Kohl's failure to precisely follow a nearly ten-step internal policy vitiates a finding of probable cause based on objective facts.

---

[6] See Ky. Rev. Stat. § 433.236, as amended in 1968, and as amended in 1978 attached to Appellee's Appendix.

Specifically, she contends that Pittman and Tam Lung did not know the exact number of items she took into the fitting room. (Appellant's Brief, Page ID #26). Snyder attempts to erect a higher standard than the law requires by contending that Kohl's must satisfy every condition of its own policy in order to establish probable cause. There is no authority to support such an assertion. Kohl's internal policy is merely a guideline and training tool for loss prevention personnel.

The failure to follow an internal policy does not, in itself, negate undisputed facts that create probable cause for a merchant to believe that a patron has unlawfully taken goods, nor does it somehow create tort liability. *See Durruthy v. Pastor*, 351 F.3d 1080, 1092 (11th Cir. 2003) (a violation of an internal policy does not vitiate a finding of probable cause based on objective facts); *Craig v. Singletary*, 127 F.3d 1030, 1044 (11th Cir. 1997) (for purposes of determining probable cause, the court was not concerned with violations of any local policies or internal guidelines). The District Court properly held that, even if true, Snyder's argument that Kohl's violated an internal policy it is of no consequence because Kohl's demonstrated with objective facts that it had probable cause to stop Snyder. (Opinion, R.E. 51, Pages ID #950-52).

Snyder's effort to distinguish *Durruthy* is unpersuasive. Although *Durruthy* involved a criminal situation, that court, and the court in the *Craig* case, were presented with the same task before the District Court – to decide whether there

was probable cause. Both decisions held that straying from an internal policy does not nullify probable cause if there is objective evidence to support the probable cause determination. The same is true in this case, and the District Court was correct to recognize that an arguable departure from a ten-step internal policy did not require the court to ignore the uncontradicted evidence in the record that supported a finding that Kohl's had probable cause to stop and question Snyder.

**B.     Kohl's Conduct Was Reasonable Under the Circumstances.**

Kohl's actions were done in a reasonable manner and for a reasonable length of time. Snyder admitted that no Kohl's employee suggested, instructed or otherwise forced her to return to the loss prevention office or remove any article of clothing and the entire incident lasted about forty minutes. (Snyder Depo., R.E. 30-1, Page ID #168, 181, 192-93). Kohl's mere acquiescence in Snyder's voluntary conduct does not make its conduct unreasonable as a matter of law. The District Court correctly recognized this fact. (Opinion, R.E. 51, Page ID #953).

Snyder misstates the record when she argues that "Appellee was asked to remove her clothing by Kohl's personnel." (Appellant's Brief, Page ID #27). Snyder testified that *no Kohl's employee* suggested she remove her clothing or submit to any search:

> Q. At any point prior to the police officer entering the room or coming into Kohl's **did anybody request that you remove any of your clothing?**

A. **No**. They actually forbade it.

.......

Q. Did any **Kohl's employees suggest**, you know, why don't you go into a fitting room and **remove some of your clothing** or anything like that?

A. **No.**

Q. It was the police officer that suggested any sort of removal of clothing.

A. Right.

(Snyder Depo, R.E. 30-1, Page ID #168, 183) (emphasis added).

Snyder also contends that the fact she consented to the search is a "distinction" without purpose.[7]    (Appellant's Brief, Page ID #27-28).    She is wrong.  Her consent is vital in establishing that Kohl's conduct was reasonable under the circumstances.  Also in her brief, Snyder alleges she did not consent to the search.  This assertion too is in direct conflict with her deposition testimony. Snyder testified that she agreed to go to the fitting room with Laurie Stevens in order to prove her innocence and that she never refused or otherwise objected to that suggestion.  (Snyder Depo., R.E. 30-1, Page ID #177).

Q. ...**he suggested something to the effect (of) a search** or whatever the word that was used, we don't know

---

[7] Snyder contradicts herself on the issue of consent.  In the Statement of Case section of her brief, Snyder tells the Court that she "reluctantly agreed" to go with Stevens.  Later in her brief, however, she denies that she agreed to the "search" allegedly proposed by Officer Bayer.  (Appellant's Brief, Page ID #10, #28).

exactly what the word was, to prove that you didn't have anything. **What did you say to him?**

A. **I complied.** I mean he's a police officer. I've been Mirandized. I don't have anything.

…

Q.    So it sounds like you agreed to remove your clothing in an effort to prove your innocence?

A. **I felt that it was necessary to remove my clothing to prove my innocence.**

Q. So is that a yes?

A. **Yes.**

(*Id.* at Page ID #175, 183-85) (emphasis added).

Her contention that she only agreed to the search grudgingly does not invalidate her agreement. "Acquiescence commonly indicates assent, however grudgingly." *United States v. Carter*, 378 F.3d 584, 589 (6th Cir. 2004).[8] As the District Court correctly acknowledged, Kohl's agreement to and mere presence for Snyder's voluntary conduct does not render its actions unreasonable, particularly

---

[8] Snyder cites to *Shreve v. Jessamine County Fiscal Court*, 453 F.3d 681 (6th Cir. 2006) to argue that her assertion she never consented to the search creates a question of fact for the jury. *Shreve* is inapplicable for two reasons: First, the record clearly establishes Snyder consented to the search, despite her subsequent efforts to disavow her own sworn admissions. Second, in *Shreve* the court found summary judgment was inappropriate because the disputed facts required the Court to determine the credibility of witnesses. In *Shreve*, the plaintiff testified that she was subjected to excessive force, and the police denied using force. By contrast, here, Snyder testified she voluntarily went with Stevens to prove her innocence. Unlike *Shreve*, there is no disagreement in this case to the material facts.

when it in no way suggested or compelled Snyder to submit to any search. (Opinion, R.E. 51, Page ID #953).

Snyder also cites to a litany of cases for the proposition that whether her alleged "detention" is lawful is an issue for the jury. Snyder, however, fails to mention that these cases were determined in the context where the parties disputed the facts, unlike the present situation.[9]

For example, Snyder relies on *McDonald's Corp. v. Ogburn* for the proposition that similar to her, the plaintiff in *Ogburn* was "strip searched," and thus, whether it was voluntary or whether Snyder felt compelled is an issue for the jury. *McDonald's Corp. v. Ogburn*, 309 S.W.3d 274 (Ky. Ct. App. 2009). As an initial matter, the facts in this case and those in *Ogburn* are starkly different. The plaintiff in *Ogburn* was a minor who was forced to strip completely naked, subjected to a cavity search and sexually assaulted. *Id.* Snyder, an adult, does not allege similar facts.

Furthermore, as previously mentioned, the District Court did not consider the credibility of the witnesses in dismissing Snyder's claim; rather, it relied *only* on the undisputed testimony. It was Snyder's own testimony that she agreed to the

---

[9] *Birdsong v. Wal-mart Stores, Inc.*, 74 S.W.3d 754 (Ky. Ct. App. 2001) (finding that the different versions of the facts lead to the conclusion that there are genuine issues of material fact to be determined by a jury); *Wal-mart Stores, Inc. v. Mitchell*, 877 S.W.2d 616 (Ky. Ct. App. 1994) (because there were disputed facts as to what happened, summary judgment was inappropriate).

suggestion that she go with Stevens and show she had no merchandise and that she never objected to that suggestion. Moreover, unlike in *Ogburn*, here there is no evidence that *this Defendant -- Kohl's --* was responsible for the alleged search. To the contrary, everyone agrees that Kohl's did not suggest Snyder go to the fitting room or remove clothes. The District Court's decision recognizes this pivotal fact:

> As a factual matter, Kohl's employees did not suggest that Snyder remove any item of clothing to prove her guilt. On one or more occasions, Snyder attempted to remove various items of clothing the presence of Kohl['s] employees. However, she was told he[r] actions were impermissible. Later, Snyder did strip down to her underware (*sic*) in the presence of a female Kohl's employee. However, her actions were either voluntary or at the suggestion of Officer Chris Bayer. That defendant has been dismissed as a party to this proceeding and any suggestion he made to induce the plaintiff's removal of clothing cannot be attributed to Kohl's.

(Opinion, R.E. 51, Page ID #956). The fact that Kohl's was present when Snyder agreed to Officer Bayer's suggestion that she go to the fitting room with Laurie Stevens does not make its conduct unreasonable as a matter of law.

Finally, Snyder suggests, for the first time, that Kohl's alleged failure to follow its internal policy can subject it to a negligence claim. But Snyder has never asserted a claim for negligence against Kohl's. In support of her argument, she cites to *Woods v. American Eagle Outfitters, Inc.*, 1999 U.S. Dist. LEXIS 14455 (E.D. Mich. Aug. 31, 1999). That case, however, does not stand for the

proposition that a shopkeeper can be liable for negligence for failure to follow an internal policy. In fact, that issue is not even mentioned. In *Woods*, the plaintiffs alleged a negligence claim against the defendants, and sometime later, plaintiffs voluntarily dismissed the claim. *Id.* at * 17. The Court never even addressed that claim in its opinion. This argument is meritless.

Considering only the undisputed testimony and Snyder's own admissions, as did the District Court, Kohl's conduct was reasonable, and thus, it is entitled to the protection of Ky. Rev. Stat. § 433.236(1).

## III. SNYDER WAIVED ANY ARGUMENT THAT A *PRIMA FACIE* CLAIM OF FALSE IMPRISONMENT EXISTS.

In her brief, Snyder made no mention of the District Court's determination that she was unable to establish a *prima facie* claim of false imprisonment. As this Court has held on numerous occasions, the failure to raise an issue in the appellant's brief is considered a waiver. *See Brindley v. McCullen*, 61 F.3d 507, 509 (6th Cir. 1995) (dismissing a claim on appeal for failure to brief the issue adequately before the Court); *Wright v. Holbrook*, 794 F.2d 1152, 1156-57 (6th Cir. 1986) (an issue raised for the first time in a reply brief was waived); *Barrett v. Detroit Heading LLC*, 311 Fed. Appx. 779, 796 (6th Cir. 2008) (appellant's failure to set forth an issue in the "issues presented for review" section of its appellate brief created a waiver).

The District Court held that the facts of this case do not support a claim for false imprisonment because Snyder's conduct was voluntary and there is no evidence that Kohl's actions were unlawful. Snyder did not preserve this issue for review. As a result, Snyder has waived this argument, and the District Court's decision dismissing the false imprisonment claim must be affirmed.

## IV. THIS COURT SHOULD AFFIRM THE DISTRICT COURT'S DETERMINATION THAT SNYDER CANNOT ESTABLISH A *PRIMA FACIE* CLAIM OF FALSE IMPRISONMENT.

If the Court decides to review the District Court's dismissal of the false imprisonment claim, it still should affirm because the facts of the record do not support a *prima facie* claim of false imprisonment as a matter of law. In Kentucky, to establish a claim of false imprisonment, a plaintiff must prove: (1) the defendant intended to confine the plaintiff or a third party within boundaries defined by the defendant; (2) the plaintiff was directly or indirectly confined; and (3) the plaintiff knew of the confinement or was harmed by it. *J.J. Newberry Co. v. Judd*, 82 S.W.2d 359 (Ky. 1935). The rule is that in order to constitute a case of false imprisonment, it is essential that there be some direct restraint present. *Great Atlantic & Pacific Tea Co. v. Smith*, 136 S.W.2d 759 (Ky. 1939). The undisputed facts do not support Snyder's *prima facie* case of false imprisonment as there is no evidence Kohl's intended to confine her or she suffered any harm as a result.

30

### A.    There Is No Evidence Kohl's Intended to Confine Snyder.

Snyder has the burden of proving that Kohl's intended to confine her or knew with "substantial certainty" that a reasonable person would believe she is confined. (Opinion, R.E. 51, Page ID #950). Confinement may arise out of words, gestures or the like, which induce a reasonable apprehension that force will be used if plaintiff does not submit. *Great Atlantic & Pacific Tea Co. v. Billups*, 69 S.W.2d 5 (Ky. 1934). **On the other hand, *submission to mere verbal direction* of another, unaccompanied by the force or threats of any character, does not constitute false imprisonment.** *Grayson Variety Store, Inc. v. Shaffer*, 402 S.W.2d 424 (there was no false imprisonment because store manager never threatened, touched or otherwise placed plaintiffs in any fear) (emphasis added).

As outlined above, Snyder willingly went with Kohl's loss prevention officer Pittman to discuss the circumstances surrounding her conduct. No Kohl's personnel ever threatened Snyder, spoke to her in a threatening manner or physically touched her. Snyder did not believe that any Kohl's personnel had weapons, nor did they take her personal belongings or attempt to block her from leaving. Snyder was never denied the ability to leave the premises; she admitted she never asked to leave. (Snyder Depo., R.E. 30-1, Page ID #149-53, 160-61). She merely submitted to the verbal direction of Kohl's loss prevention personnel,

which as a matter of law, does not constitute confinement. *Grayson Variety Store*, 402 S.W.2d 424.

**B.    Snyder Was Not Confined By Kohl's.**

There is no liability for false imprisonment if the person has a reasonable means of escape and knows it. *See* Restatement (Second) of Torts § 36. Confinement may occur when the plaintiff, even though free to depart, stays to protect property. *National Bond & Inv. Co. v. Whithorn*, 123 S.W.2d 263 (Ky. 1938). However, under Kentucky law, there is no confinement when the person remains merely to protect his or her reputation. *Columbia Sussex Corp. v. Hay*, 627 S.W.2d 270, 278 (Ky. Ct. App. 1981); *Stump v. Wal-mart Stores, Inc.*, 942 F. Supp. 347, 350 (E.D. Ky. 1996).

Snyder testified that none of her personal belongings were taken by Kohl's and she was free to leave at anytime. She further conceded that she willingly returned to the loss prevention office to clear her name. (Snyder Depo., R.E. 30-1, Page ID #152-53). Snyder decided to stay to protect her reputation. These facts are insufficient as a matter of law to sustain a false imprisonment claim, and this Court should affirm the District Court's decision dismissing this claim.

**C.    Snyder Suffered No Harm from Her Alleged Confinement.**

Even assuming Snyder was confined, there is no evidence she was harmed by the alleged confinement. The entire incident was about forty minutes, and no

one physically touched or hurt Snyder. Snyder testified she was embarrassed, but admitted that it has not prevented her from continuing on with her life – in fact she was able to go out to meet friends shortly after the incident. Snyder never sought treatment or counseling as a result of the events of March 1, 2012. (Snyder Depo., R.E. 30-1, Page ID #149, 161, 184, 196, 211, 236-37, 242). The record establishes that Snyder was unharmed by Kohl's alleged confinement of her. Based on the above reasons, and as indicated by the District Court, the undisputed facts do not support a claim of false imprisonment, and this Court should affirm the District Court's dismissal of that claim.

## V.    SNYDER'S 42 U.S.C. § 1983 CLAIM IS BASELESS.

### A.    Snyder Waived Her Section 1983 Claim.

Despite Snyder's assertions to the contrary, as of the date of the District Court's dismissal of Snyder's claims, a Section 1983 claim still was pending against Kohl's. (Appellant's Brief, Page ID #21). In paragraph 48 of her Complaint, Snyder specifically alleged that Kohl's acted in concert with Officer Bayer to violate her rights under the Fourth, Sixth and Fourteenth Amendments to the Constitution of the United States in violation of 42 U.S.C. § 1983. (Complaint, R.E. 1-1, Page ID #8-10). During Snyder's deposition, her counsel acknowledged on the record that she was asserting a Section 1983 claim against

33

Kohl's. (Snyder Depo., R.E. 30-1, Page ID #226). Snyder never filed a voluntary dismissal of that claim.

In her Response to Kohl's Motion for Summary Judgment, Snyder did not address the issue of whether Kohl's may be liable under Section 1983. (Plaintiff's Response, R.E. 35). Accordingly, based on Snyder's own failure to pursue these claims at the summary judgment stage and on appeal, Snyder waived her § 1983 claims against Kohl's, and this Court should not consider it. *See Brindley*, 61 F.3d 507; *Wright,* 794 F.2d 1152; *Barrett v. Detroit Heading LLC*, 311 Fed. Appx. 779.

## B.     The District Court Correctly Concluded That the Record Does Not Support a Section 1983 Claim.

Even setting aside Snyder's waiver of this claim, the District Court correctly concluded that the undisputed facts do not support a claim under § 1983. To establish a *prima facie* claim under § 1983, Snyder must prove that: (1) the conduct complained of was committed by a person acting under the color of state law; and (2) the conduct deprived her of rights secured by the Constitution or the laws of the United States. *McKnight v. Rees*, 88 F.3d 417, 419 (6th Cir. 1996).

### 1.     Kohl's Was Not a State Actor or Acting Under the Color of State Law.

It is undisputed that Kohl's was not a state actor or acting under the color of state law. Kohl's is a private company with no connection to any government entity, and for it to be liable under Section 1983, the infringement of constitutional

rights alleged by Snyder must be "fairly attributable to the state." *Rendell–Baker v. Kohn*, 457 U.S. 830, 838 (1982). This Court has recognized three tests for determining whether private conduct is fairly attributable to the state. The public function test is satisfied only when the private entity has exercised powers that are traditionally exclusively reserved to the state, such as holding elections and the exercise of eminent domain. *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992). Stopping an individual suspected of shoplifting in a private retail establishment is certainly not within the exclusive province of the state. Rather, it is common for purely private corporations like Kohl's to do this – hence, the statutory protection under KRS § 433.236(1).

Under the nexus test, "(t)he mere existence of a contract between a governmental agency and a private party is insufficient to create state action." *Simescu v. Emmet County Dep't of Social Servs.*, 942 F.2d 372, 375 (6th Cir. 1991). There is absolutely no evidence in the record that Kohl's and the Georgetown Police Department had a sufficiently close relationship as to convert Kohl's conduct to a state action. There is no contract between Kohl's and the Georgetown Police Department, nor is there evidence that the Georgetown Police Department is intimately involved in Kohl's Loss Prevention methods or practices.

This Court has also recognized a standard called the state compulsion test, which applies only where the "state exercise(s) such coercive power or provide(s)

such significant encouragement, either overt or covert, that in law the choice of the private actor is deemed to be that of the state." *Wolotsky*, 960 F.2d at 1335. Mere approval or acquiescence on the part of the state is insufficient, however, to hold the state responsible for the complained conduct. *Id.* Courts have held that this standard is met when a private person and public official come to an understanding, act in concert or conspire to deprive someone of their constitutional rights. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970).

The record is devoid of any evidence that Kohl's and the Georgetown Police Department or Officer Bayer had an understanding or acted to conspire to deprive Snyder of her constitutional rights. Snyder alleges that she was subjected to an unreasonable search. Snyder, however, admitted that at no point did any Kohl's employee suggest or otherwise imply that Snyder should submit to a search and that she was not directed to remove her clothing by any Kohl's employee. (Snyder Depo., R.E. 30-1, Page ID #168, 183, 192-93). The only evidence supporting this claim is that a Kohl's employee was present when she removed some of her clothing. This is insufficient to establish that Kohl's acted under the color of state law.

### 2.    Snyder Consented to the Search, and Kohl's Did Not Deprive Snyder of Any Rights Secured by the Constitution.

Even assuming, *arguendo*, that Kohl's was acting under the color of state law, there is no evidence that it deprived Snyder of her rights under the Fourth,

Sixth or Fourteenth Amendments of the United States Constitution.[10]  It is well-settled that a person may waive her Fourth Amendment rights by consenting to a search.  *United States v. Carter*, 378 F.3d 584, 587 (6th Cir. 2004) (citing *Davis v. United States*, 328 U.S. 582, 593-94 (1946)).  Additionally, consent does not need to be verbal; instead, it may be in the form of "words, gestures or conduct."  *Id.* at 587.  *See also United States v. Coleman*, 458 F.3d 453, 458 (6th Cir. 2006).

This Court has looked at the following factors when determining the voluntariness of consent:  (1) the suspect's age; (2) lack of education or low intelligence; (3) lack of any warning regarding the suspect's constitutional rights; (4) evidence of duress or coercion (*i.e.*, deprivation of food or sleep or prolonged detention or questioning).  *Center for Bio-Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807 (6th Cir. 2007).

As discussed above, Snyder agreed with Officer Bayer's suggestion to go with Laurie Steven to the fitting room in order to prove her innocence.  She never refused or otherwise objected.  Again, her contention that she only agreed to the search grudgingly does not nullify her agreement.  *Carter*, 378 F.3d at 589.

Applying the factors for analyzing consent leads to the conclusion that Snyder voluntarily agreed to the search.  Snyder is in her twenties.  There is no

---

[10] Snyder testified she was unaware of the basis for her claim pursuant to the Sixth Amendment, and did not address it in her Response to Kohl's Motion for Summary Judgment.  If she ever had a claim under the Sixth Amendment, she has waived it.

evidence that she lacked intelligence; she was active in nursing school at the time of the incident.  Officer Bayer read Snyder her Miranda rights before she went with Stevens into the fitting room.   Accordingly, she was well aware of her constitutional rights.

Regarding the final factor in the voluntariness analysis, there is no evidence that Snyder was coerced.   Snyder was not yelled at, threatened, touched or otherwise placed under any duress.  No one stated she was under arrest or would be arrested.  Rather, Snyder willingly agreed to Officer Bayer's suggestion that she go with Stevens to the fitting room.  No Kohl's personnel ever made the suggestion for Snyder to be searched.  (Snyder Depo., R.E. 30-1, Page ID #152, 168-69, 174-77, 181).  The mere fact that Officer Bayer was present and questioning Snyder is insufficient to invalidate her consent.  There is absolutely no evidence that Kohl's violated Snyder's constitutional rights, and thus, even if she could demonstrate Kohl's was a state actor, she has no basis to support a Section 1983 claim.

## VI.   THE DISTRICT COURT PROPERLY DISMISSED SNYDER'S INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM.

In her brief, Snyder runs through a list of cases and reasons she believes she is entitled to recover for intentional infliction of emotional distress ("IIED").  She, however, overlooks the fact that the relevant case law prohibits her from recovering for IIED because damages for emotional distress are available as a remedy for false imprisonment.

38

As the District Court correctly recognized, Kentucky law holds that IIED is not a valid cause of action where the allegedly wrongful conduct constitutes another tort for which emotional distress damages are available. (Opinion, R.E. 51, Page ID #955). *See Childers v. Geile*, 367 S.W.3d 576 (Ky. 2012); *Grace v. Armstrong Coal Co.*, 2009 U.S. Dist. LEXIS 11315, *8 (W.D. Ky. Feb. 13, 2009); *Buckner v. Bryant*, 2013 U.S. Dist. LEXIS 41025 (E.D. Ky. Mar. 25, 2013). "(A)n IIED claim cannot be pled by itself, in tandem with another tort, or in the alternative as long as some other tort with adequate relief fits the facts." *Armstrong Coal Co.*, 2009 U.S. Dist. LEXIS 11315 at *8-9. The Kentucky Court of Appeals has held that a plaintiff cannot assert a claim for IIED in an action also alleging false imprisonment because the tort of false imprisonment allows a plaintiff to seek damages for alleged "mental suffering, humiliation and the like." *Banks v. Fritsch*, 39 S.W.3d 474, 479 (Ky. Ct. App. 2001). Kentucky law is clear: Snyder is not entitled to recover for IIED because damages for emotional distress are available as a remedy for false imprisonment. Furthermore, Snyder waived her ability to dispute the District Court's holding on this issue because she failed to address this portion of the District Court's opinion in her brief.

Even if this Court were to consider Snyder's claim for IIED, the facts do not support a *prima facie* case. To establish a *prima facie* case of IIED, Snyder must demonstrate: (1) the conduct of Kohl's was outrageous in that it offends the

39

generally accepted societal standards of decency and morality; (2) the conduct of Kohl's was intentional or reckless in the sense that it should know, or have reason to know, that it would cause Snyder severe emotional distress; and (3) Snyder suffered severe emotional distress because of Kohl's conduct.

### A.    Kohl's Conduct Was Reasonable Under the Circumstances.

There is no evidence that Kohl's conduct was "beyond all possible bounds of decency." *Wilhoite v. Cobb*, 761 S.W.2d 625, 627 (Ky. Ct. App. 1988), *overruled in part on other grounds, Osborne v. Kenney*, 399 S.W.3d 1 (Ky. 2012). Courts have been clear that impolite or discourteous conduct does not rise to the level of outrageous conduct. *Burton v. Kentucky State Police*, 341 S.W.3d 589, 594 (Ky. Ct. App. 2011). "Citizens in our society are expected to withstand petty insults, unkind words and *minor indignities*. Such irritations are a part of normal, every day life and constitute no legal cause of action. It is only the outrageous and intolerable conduct which is covered by this tort." *Id.* (emphasis added). Despite Snyder's contentions, the issue of whether conduct is so outrageous as to permit recovery is a question of law for the court to decide. *Goebel v. Arnett*, 259 S.W.3d 489, 493 (Ky. Ct. App. 2007).

The evidence in the record leaves no doubt that Kohl's conduct was reasonable given the circumstances. Snyder even testified that Kohl's had reason to assume she was shoplifting and stop her after they observed her enter a fitting

40

room, overheard popping noises and then could not locate the merchandise they believed she had in her possession. (Snyder Depo., R.E. 30-1, Page ID #208, 228, 232). Snyder admits she was merely "embarrassed" after being stopped. (*Id.* at Page ID #176). Snyder was more concerned about being disrespected or the fact that someone may have seen her than she was about any alleged "outrageous conduct." (*Id.*)

Snyder likens her situation to extreme cases that bear no resemblance to her own – cases in which individuals were threatened, physically assaulted and coerced. *See Craft v. Rice*, 671 S.W.2d 247 (Ky. 1984) (IIED claim upheld where the plaintiff was harassed over a *three month period*, driving her off the road and threatening her); *Kroger Co.*, 920 S.W.2d 61 (Ky. 1996) (IIED claim was successful after the plaintiff was forced to resign, received fictitious evaluations about poor performance, falsely guaranteed a new job and suffered physical effects from emotional distress). None of these things happened to Snyder. Snyder also asserts that Kohl's failure to follow its internal policy crosses the bounds of decency. Missing a step in a nearly ten-step internal policy is far from beyond the bounds of decency and, as previously discussed, does not create a separate cause of action.

**B.    Kohl's Did Not Act with Intent or Reckless Disregard, and Snyder Did Not Suffer Severe Emotional Distress.**

There is also no evidence that Kohl's desired to or acted with reckless disregard to cause Snyder severe emotional distress. As indicated above, Snyder admits that Kohl's decision to stop her was reasonable under the circumstances. Snyder willingly returned to the loss prevention office where she was questioned. Kohl's contacted the authorities pursuant to its policy. Officer Bayer arrived at the premises and, in response to Snyder's actions in attempting to remove her shirt, asked if Snyder would go into a fitting room with Stevens.

As to the third element of the tort, the record is devoid of any evidence that Snyder suffered severe emotional distress sufficient to give rise to a claim of IIED. Although physical injuries are not required to recover from severe emotional distress, simply being upset because of the defendant's conduct, without some neurosis, psychosis, chronic depression, phobia or other type of *severe and disabling* emotional or mental condition, will not be sufficient to justify a claim. *See Craft v. Rice*, 671 S.W.2d 247 (Ky. 1984); *Waddle v. Sparks*, 414 S.E.2d 22 (N.C. 1992). "Mere sorrow" does not rise, as a matter of law, to the level of severe emotional distress. *Gilbert v. Barkes*, 987 S.W.2d 772 (Ky. 1999).

Snyder has not sought any treatment for her embarrassment. The incident has not prevented her from going out with friends, continuing school or participating in hobbies. Snyder admitted that although she feared that the incident

would hurt her reputation, there is no evidence that it did or that anyone is aware of the episode. Snyder has suffered no continuing physical symptoms, and merely alleges in her brief that she felt "completely frazzled." She contends she has been uncomfortable shopping or trying on clothes. As a matter of law, such minor indignities, without some severe and disabling emotional or mental condition, are insufficient to justify a claim. *See Craft*, 671 S.W.2d 247. Given the undisputed facts in the record, the District Court was justified in granting summary judgment on Snyder's intentional infliction of emotional distress claim.

## **CONCLUSION**

The District Court properly granted summary judgment to Kohl's on all of Snyder's claims against it. For the reasons discussed above, Kohl's respectfully requests that the Court affirm the District Court's judgment.

Respectfully Submitted,

/s/ Cynthia Blevins Doll
Cynthia Blevins Doll
Emily N. Litzinger
FISHER & PHILLIPS LLP
220 W. Main Street, Suite 2000
Louisville, Kentucky 40202
Telephone: (502) 561-3990
Facsimile: (502) 561-3991
E-mail: cdoll@laborlawyers.com
E-mail: elitzinger@laborlawyers.com

COUNSEL FOR DEFENDANT-
APPELLEE, KOHL'S DEPARTMENT
STORES, INC.

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation of Fed. R.

App. P. 32(a)(7)(B). According to the word processing program used to prepare

this brief (Microsoft Word 97-2002), this brief contains 9,958 words.

/s/ Cynthia Blevins Doll
COUNSEL FOR DEFENDANT-
APPELLEE, KOHL'S DEPARTMENT
STORES, INC.

Date: May 1, 2014

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 1, 2014, this Appellee's Brief was served via the Court's ECF system on the following:

Edward E. Dove, Esq.
300 Lexington Building
201 West Short Street
Lexington, KY 40507

Counsel for Plaintiff-Appellant

/s/ Cynthia Blevins Doll
COUNSEL FOR DEFENDANT-
APPELLEE, KOHL'S DEPARTMENT
STORES, INC.

# ADDENDUM

## DEFENDANT-APPELLEE KOHL'S DEPARTMENT STORES, INC.'S DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

Pursuant to 6 Cir. R. 28(c) and 30(b), Defendant-Appellee Kohl's Department Stores, Inc. ("Kohl's") respectfully submits this designation of the relevant District Court documents.

| Entry Description | Docket Entry No. |
|---|---|
| Complaint | 1-1 |
| Affidavit of Richard Bell | 31-3 |
| Incident Report | 31-5 |
| Kohl's Loss Prevention Guidelines | 31-4 |
| Michael Pittman Deposition | 33-3 |
| Michael Tam Lung Deposition | 33-4 |
| Officer Chris Bayer Deposition | 33-5 |
| Bridgette Snyder Deposition, pp. 1-130 | 30-1 |
| Bridgette Snyder Deposition, pp. 131-180 | 30-2 |
| Kohl's Motion for Summary Judgment and Memorandum in Support | 31 |
| Snyder's Response to Motion for Summary Judgment | 35 |
| Notice of Dismissal of Claims Against City of Georgetown and Officer Bayer | 46 |
| Kohl's Reply in Support of Motion for Summary Judgment | 39 |

| Entry Description | Docket Entry No. |
|---|---|
| Opinion and Order | 51 |

# APPENDIX

## DEFENDANT-APPELLEE KOHL'S DEPARTMENT STORES, INC.'S APPENDIX

Pursuant to 6 Cir. R. 30, Defendant-Appellee Kohl's Department Stores, Inc.

("Kohl's") respectfully submits this Appendix.

| Document Description | Page No. |
|---|---|
| Ky. Rev. Stat. § 433.236, as amended in 1968. | 1-2 |
| Ky. Rev. Stat. § 433.236, as amended in 1978. | 3-4 |

Respectfully submitted,

*/s/ Cynthia Blevins Doll*
Cynthia Blevins Doll
Emily N. Litzinger
FISHER & PHILLIPS LLP
220 W. Main Street, Suite 2000
Louisville, Kentucky  40202
Telephone:  (502) 561-3990
Facsimile:  (502) 561-3991
E-mail:  cdoll@laborlawyers.com
E-mail:  elitzinger@laborlawyers.com

COUNSEL FOR DEFENDANT-APPELLEE, KOHL'S DEPARTMENT STORES, INC.

Lou.121878v3

# Kentucky
# Revised Statutes

ANNOTATED

## OFFICIAL EDITION

Containing Statute Laws of the Commonwealth
of a General and Permanent Nature
in Effect as of July 1, 1970

Volume 16

Compiled and Published under the
Authority and Supervision of the
Legislative Research Commission

THE BOBBS-MERRILL COMPANY, INC.

*A SUBSIDIARY OF HOWARD W. SAMS & CO., INC.*

PUBLISHERS  •  INDIANAPOLIS  •  KANSAS CITY  •  NEW YORK

COMMONWEALTH OF KENTUCKY
STATE LAW LIBRARY

433.234                              CRIMES AND PUNISHMENTS                              110

Ky. 500, 63 S. W. (2d) 585 (decision prior          52A C. J. S., Larceny, §§ 60(1), 158,
to 1962 amendment).                                 159.
  Collateral References. 50 Am. Jur.
(2d), Larceny, §§ 44, 45.

**433.234. Shoplifting.—(1)** Any person who takes merchandise offered for sale by any store or other mercantile establishment with the intention of converting the same to his own use without paying the purchase price therefor, shall be fined not more than three hundred dollars ($300) or imprisoned not more than six (6) months, or both for the first offense. For a second offense he shall be fined not more than five hundred dollars ($500) and imprisoned not more than six (6) months, and for a third offense he shall be imprisoned in the penitentiary not less than one (1) nor more than five (5) years.

(2) Wilful concealment of unpurchased merchandise of any store or other mercantile establishment on the premises of such store shall be prima facie evidence of concealment with intention of converting same to personal use without paying the purchase price therefor.

(3) All city and county law enforcement agencies shall cause a photograph, a set of fingerprints and a general descriptive report of all persons except juveniles arrested under this section and KRS 433.236 to be made. If convicted, two (2) copies of each item shall be forwarded within thirty (30) days to the division of state police of the department of public safety. (Enact. Acts 1958, ch. 11, § 1; 1968, ch. 49, § 1.)

  Opinions of Attorney General. The          52A C. J. S., Larceny, §§ 1(5), 4, 21,
Kentucky "shoplifting law" is constitu    25, 70, 104, 158, 159.
tional because it does not permit either      Validity, construction, and effect of
an unreasonable arrest or an unreason     statutes establishing shoplifting as speable stopping. OAG 69-64.                  cific criminal offense. 90 A. L. R. (2d)
  Collateral References. 50 Am. Jur. (2d),  811.
Larceny, § 50.

**433.236. Detention and arrest of shoplifting suspect.—(1)** A peace officer, security agent of a mercantile establishment, merchant or merchant's employe who has probable cause for believing that goods held for sale by the merchant have been unlawfully taken by a person, and that he can recover same by taking the person into custody, may, for the purpose of attempting to effect recovery, take the person into custody and detain him in a reasonable manner for a reasonable length of time.

(2) Any peace officer may arrest without warrant any person he has probable cause for believing has committed larceny in retail or wholesale establishments. (Enact. Acts 1958, ch. 11, § 2; 1968, ch. 49, § 2.)

  Opinions of Attorney General. A spe      necessary to ascertain that the property
cial police officer appointment under KRS   has been taken and to regain possession.
61.360 would not give such officer the      OAG 69-64.
power to arrest a shoplifter. He would         If an individual is being detained
only have the power of detention given      against his will, he has a right to know
under this section and he would have the    the reason for the detention and a resame detention authority as any other       quest must be made for the return of
employe of the establishment. OAG 68-       the merchandise. OAG 69-64.
498.                                            If the retailer either states to a police
  Detention under this section would not    officer that he saw merchandise conbe authorized beyond the time reasonably    cealed by the person accused or produces

# Kentucky
# Revised Statutes

ANNOTATED

# OFFICIAL EDITION

Containing Statute Laws of the Commonwealth of a
General and Permanent Nature in Effect as of
January 1, 1985

## Volume 16

### 1985 REPLACEMENT

Compiled and Published under the
Authority and Supervision of the
Legislative Research Commission

THE MICHIE COMPANY
*Law Publishers*
CHARLOTTESVILLE, VIRGINIA

[Repealed.]

›resent law see KRS
30.

son in house —

511.040, 514.030,

›m in boat with

present law see KRS

to kill or steal.

present law see KRS

ossession of a

5. For present law see

ıout consent of

r present law see KRS

› January 1, 1975. For
14.030.

unpurchased mer-
›n the premises of
prive the owner of

l cause to be made
ptive report of all
›t of shoplifting. If

convicted, two (2) copies of each item shall be forwarded within thirty (30) days to the department of state police of the justice cabinet. (Enact. Acts 1958, ch. 11, § 1; 1968, ch. 49, § 1; 1974, ch. 74, Art. V, § 24(3); 1974, ch. 406, § 318.)

**Cross-References.** Theft by unlawful taking or disposition, KRS 514.030.

**Kentucky Law Journal.** Lawson, Criminal Law Revision in Kentucky: Part II — Inchoate Crimes, 58 Ky. L.J. 695 (1970).

Kentucky Law Survey, Ausness, Torts, 65 Ky. L.J. 301 (1976-77).

**Opinions of Attorney General.** The Kentucky "shoplifting law" is constitutional because it does not permit either an unreasonable arrest or an unreasonable stopping. OAG 69-64.

Subsection (1) of KRS 433.236 allows detention, which is not an arrest, for shoplifting by both commissioned and noncommissioned security officers while subsection (2) (now (3)) allows a peace officer to arrest for a misdemeanor involving larceny on probable cause without a warrant, which misdemeanor larceny offenses include shoplifting under this section as shoplifting involves a "larceny" under common law definition. OAG 74-94.

**Collateral References**

50 Am. Jur. 2d, Larceny, § 50.

52A C.J.S., Larceny, §§ 1(5), 4, 21, 25, 70, 104.

Validity, construction, and effect of statutes establishing shoplifting as specific criminal offense. 90 A.L.R.2d 811.

**433.236. Detention and arrest of shoplifting suspect.**—(1) A peace officer, security agent of a mercantile establishment, merchant or merchant's employe who has probable cause for believing that goods held for sale by the merchant have been unlawfully taken by a person may take the person into custody and detain him in a reasonable manner for a reasonable length of time, on the premises of the mercantile establishment or off the premises of the mercantile establishment, if the persons enumerated in this section are in fresh pursuit, for any or all of the following purposes:

(a) To request identification;

(b) To verify such identification;

(c) To make reasonable inquiry as to whether such person has in his possession unpurchased merchandise, and to make reasonable investigation of the ownership of such merchandise;

(d) To recover or attempt to recover goods taken from the mercantile establishment by such person, or by others accompanying him;

(e) To inform a peace officer or law enforcement agency of the detention of the person and to surrender the person to the custody of a peace officer, and in the case of a minor, to inform the parents, guardian, or other person having custody of that minor of his detention, in addition to surrendering the minor to the custody of a peace officer.

(2) The recovery of goods taken from the mercantile establishment by the person detained or by others shall not limit the right of the persons named in subsection (1) of this section to detain such person for peace officers or otherwise accomplish the purposes of subsection (1).

(3) Any peace officer may arrest without warrant any person he has probable cause for believing has committed larceny in retail or wholesale establishments. (Enact. Acts 1958, ch. 11, § 2; 1968, ch. 49, § 2; 1978, ch. 75, § 1, effective June 17, 1978.)